## KALLE MALINIEMI v. GUSTAVUS A. GRONLUND.

*Arrest—False imprisonment—Probable cause.*

1. A private person has a right to make an arrest on suspicion of felony, but, if it appears that the wrong man is thus imprisoned, he must be prepared to show in justification:

   *a*—That a felony has been committed.

   *b*—That the circumstances under which he acted were such that any reasonable person, acting without passion or prejudice, would have fairly suspected that the plaintiff committed the felony, or was implicated in it.

2. An agent for a steamboat line, without asking or knowing the name or residence of a foreigner (of his own nationality), with whom he had talked about purchasing tickets, came into the

room where the foreigner was, accompanied by a policeman, and beckoned to the foreigner to come foreward, saying that the policeman wished to talk with him, and on his doing so the policeman arrested him. The prisoner inquired of the agent what was the matter, and was told to go with the officer, and an interpreter would come when he wanted him. The prisoner was imprisoned for a time, and discharged on his examination, it being a case of mistaken identity. While in jail the agent asked the prisoner what his name was, and it was told him, and he told the prisoner, if he was not the man wanted, not to pay any money to lawyers and not to sign any papers. And it is held that the agent was the procuring cause of the arrest and imprisonment, and that, too, without probable cause, as he failed to make the inquiry demanded under the circumstances, before pointing the prisoner out and beckoning him to come to the police officer, and that he was liable for the consequent damage in an action for false imprisonment.

Error to Marquette. (Stone, J.) Submitted on briefs May 12, 1892. Decided June 10, 1892.

Trespass. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Clark & Pearl,* for appellant, contended:

1. The circuit judge erred in submitting this case to the jury, and refusing defendant's second request, which asked the court to inform the jury that "false imprisonment is the unlawful restraint of a person contrary to his will, either with or without process of law," and that there is no evidence that the defendant so restrained the plaintiff; and because the court assumed such a condition of facts, or that there was evidence of such a condition of facts for the consideration of the jury, as follows: "If this defendant arrested or caused or procured this plaintiff to be arrested without process, then the defendant would be liable for certain damages, which the court will charge you upon." This is charging upon an imaginative basis, upon what might have been, but not what the evidence shows did exist, which this Court has frequently held to be error; citing *Wisner v. Davenport,* 5 Mich. 501; *Hewitt v. Begole,* 22 Id. 31; *Lacy v. Wilson,* 24 Id. 479; *People v. Jones,* Id. 216, 228; *Josseyln v. Bishop,* 25 Id. 397; *Druse v. Wheeler,* 26 Id. 199, 200; *Chadwick v. Butler,* 28 Id. 349, 352; *Moynahan v.*

*Connor*, 30 Id. 136; *Hunt v. Order of Chosen Friends*, 64 Id. 671, 675.

2. Of course, in considering this case, as to whether or not it should have been taken from the jury and a verdict directed in favor of the defendant, the testimony most favorable to the plaintiff must be considered. There is not one word of evidence that the defendant ever laid hands on the plaintiff, or assisted in doing so, or that he ever said anything to terrorize or frighten him, so as to put him under restraint. False imprisonment is the unlawful *restraint* of a person contrary to his will, either with or without process of law. It is an unlawful physical restraint by one of another's liberty, whether in a prison or elsewhere, in a place stationary or moving, under claim of authority or not, by bolts and bars, by threats overpowering the will, or by any other means; citing Bishop, Non-Cont. Law, § 206; 2 Bishop, Crim. Law, § 748; 7 Amer. & Eng. Enc. Law, 661; Bouv. Law Dist.

3. There is nothing in the evidence to show any act on the part of the defendant which caused any physical restraint of the plaintiff, or that overpowered him, or assisted in overpowering him, by threats or other language, or that restrained him in any form. The entire arrest was made by the policeman, both in word and act. Gronlund simply advised the plaintiff when arrested not to resist the officer, but to give him his revolver and knife, and to go with him quietly, and that an interpreter would explain everything, as he could not speak English. This certainly would not furnish evidence to go to the jury from which to determine whether or not the defendant was liable for false imprisonment, and to submit any such facts to the jury on such an issue, to conjecture over and guess at, was clearly error; citing *Mining Co. v. Brady*, 16 Mich. 332; *Medina Township v. Perkins*, 48 Id. 67; *Seligman v. Ten Eyck*, 49 Id. 104.

4. It is plain that the defendant was not liable, and there was no evidence to go to the jury of his liability, unless there was something in the evidence which would tend to show that he was what the law calls a "procurer" of the arrest. One who procures the arrest, whether present or absent when it is made, is in like manner answerable in false imprisonment; citing Bishop, Non-Cont. Law, § 209; and there is no evidence in the case whatever that tends to show that the defendant was a procurer of the arrest, in the sense that would make him liable under the principle of law referred to.

5. If a private person takes a part in an unlawful imprisonment of another by an officer, he becomes a principal in the act,

and is liable for the trespass; but if he merely communicates facts or circumstances of suspicion to the officer, leaving him to act on his own judgment, he is not liable at all in an action either for malicious prosecution or for false imprisonment; citing *Lock v. Ashton*, 12 Adol. & El. N. S. 871; *Brown v. Chadsey*, 39 Barb. 253; *VonLatham v. Libby*, 38 Id. 339; *Peckham v. Tomlinson*, 6 Id. 253.

*E. E. Osborn*, for plaintiff.

MORSE, C. J. This is an action for false imprisonment, in which the plaintiff recovered judgment for $750. The only question to be here considered is whether, upon his own showing, the plaintiff made out a case.

His own story, in substance, is this: He is a native of Finland, and cannot speak English, and understands it imperfectly. He had worked four years in the mines at Ishpeming, and left there on the 11th day of January, 1891, and went to the city of New York, intending from there to take passage to his native country. The defendant was also a Finn, and agent for a steamboat line in New York. Plaintiff went to defendant's office for a ticket, reaching New York on the 13th of January, 1891. He was arrested in such office on the 14th day of the same month. He had talked to Gronlund twice about tickets before he was arrested. The vessel was to leave on Saturday, the 17th of January, 1891. He did not tell Gronlund his name, or where he came from, and Gronlund did not ask him his name or residence. When arrested he was in the back room of Gronlund's office. Defendant came in with a policeman, and beckoned with his hand for plaintiff to come forward, and said that the policeman wished to talk with him. The officer arrested the plaintiff, taking his knife and revolver from him. The police officer could not speak Finnish. Plaintiff asked defendant what was the matter, and Gronlund

told him to go with the officer, and that an interpreter would come when plaintiff wanted him. Plaintiff was put in jail, and kept there until the 1st or 2d of February, 1891, when he was taken by the sheriff of Marquette county to Ishpeming, and there discharged on the 6th of the same month. The man wanted, and for whom plaintiff was mistakenly arrested, was one Jacob Martella, accused of larceny. While he was in jail at New York, Gronlund told him why he was arrested, and also that a man was coming from this State to identify him. Gronlund asked him while in jail what his name was, and plaintiff told him. Gronlund said to him, if he was not the man wanted, not to pay any money to lawyers or sign any papers.

The defendant gives a different version of the transaction, which, if true, would acquit him of all liability for the plaintiff's arrest, as the court instructed the jury. He received a telegram from Ishpeming to have a man arrested, bearing a certain description. He thought that plaintiff filled the description, and replied that the man was there. A policeman afterwards came to the office, and said that he had an order to arrest one Jacob Martella, and asked defendant if he knew any one by that name. Gronlund replied that he did not, but said, "Here is one fellow that answers the description." The officer asked him if he knew where the man was. They went to the back room, and defendant looked through the door, and there were several men sitting there, the plaintiff among them. Gronlund said to the policeman:

"'There is a man sitting inside that resembles the description.' So he instructed me to call the name 'Jacob Martella.' He instructed me to go in and call very loud, 'Jacob Martella, here is a gentleman wants to see you.' And I went inside and called very loud; I was

speaking under his instructions; I said, 'Jacob Martella, here is a gentleman that wants to see you;' and I didn't point at him even; I didn't look at him; I looked at the crowd, but not at him specially; and as quick as I said that he stepped up and asked what was wanted of Martella, or something like that. Then the police detective went to him, and put his hand upon his shoulder, and said, 'Jacob Martella, in the name of the law I arrest you,' and he so received the man."

If the jury believed the statement of Gronlund as a whole, it might be said that the plaintiff was responsible for his own arrest by answering to the name of Martella; but the plaintiff's evidence shows that Gronlund was the procuring cause of his arrest and imprisonment, and that, too, without probable cause, as defendant failed to make the inquiry demanded under the circumstances, before pointing him out and beckoning him to come to the police officer. There was no malice in Gronlund's action, and the court so informed the jury; but for the arrest, and the consequent damage to plaintiff, defendant was plainly responsible, under the plaintiff's showing and the authorities. If it had not been for defendant, plaintiff would never have been arrested or imprisoned. The whole period of plaintiff's imprisonment was the natural result of defendant's acts. According to plaintiff's statement, defendant did more than simply to communicate facts and circumstances of suspicion to the officer, leaving such officer to act on his own judgment. The officer, who is not sworn in the case, evidently acted upon the judgment of Gronlund, and it may well be said that defendant directed the arrest.

A private person has a right to arrest a man on suspicion of felony without a warrant; but if he does so, and it turns out that the wrong man is imprisoned, he must be prepared to show in justification—*First*, that a felony has been committed; and, *second*, that the cir-

cumstances under which he acted were such that any reasonable person, acting without passion or prejudice, would have fairly suspected that the plaintiff committed it, or was implicated in it. 2 Add. Torts, § 803, and cases cited. In this case there was no reasonable ground for the arrest, under the plaintiff's showing; and according to the defendant's testimony .he had taken no pains before the arrest to find out who plaintiff was. He did not know his name, or where he was from, and did not inquire. His sole ground for suspicion was that he thought he answered the description sent by telegram, which description he does not give. See *Malcolmson v. Gibbons,* 56 Mich. 459.

The judgment is affirmed, with costs.

The other Justices concurred.