Per Curiam.
 

 Plaintiffs, Josephine Marie Raudabaugh and Alfred Blair Raudabaugh, filed suit for damages in the Wayne County Circuit Court and the Court of Claims against defendants, Duane F. Baley, a State Police detective sergeant, and the Michigan Department of State Police, alleging that: (1) their automobile was unlawfully taken and detained; (2) Josephine Raudabaugh was falsely arrested; and (3) Alfred Raudabaugh was falsely arrested and maliciously prosecuted. Following a consolidated bench trial, the trial court awarded damages to Josephine Raudabaugh in the amount of $35,000 and to Alfred Raudabaugh in a similar amount of $35,000, finding against defendants on all claims except that of malicious prosecution. From the judgments entered thereon, defendants appeal as of right, and plaintiffs cross appeal from the verdict of no cause of action as to the malicious prosecution count.
 

 On the morning of October 2, 1979, plaintiff Josephine Raudabaugh left her home and drove a Pontiac Firebird automobile to attend to various domestic errands. Shortly thereafter, at the direction of defendant Baley, she was stopped by several police patrol cars. Transported to the police station, she was released at about 12:45 p.m., but the automobile was detained.
 

 On November 1, 1979, plaintiffs filed a complaint for claim and delivery*
 
 [1]
 
 in the Wayne
 
 *246
 
 County Circuit Court, seeking the return of their automobile. At a hearing thereon, Sergeant Baley was ordered either to obtain a warrant for the arrest of an individual related to his retention of the vehicle or to return the vehicle to plaintiffs. On November 15, 1979, an arrest warrant was issued, charging plaintiff Alfred Raudabaugh with receiving and concealing stolen property with a value over $100 in connection with the "front clip” of the automobile. Ultimately, the criminal case against plaintiff Alfred Raudabaugh was dismissed and the State Police were ordered to return the detained property to plaintiffs.
 

 At the conclusion of the bench trial, the trial court found that Sergeant Baley neither had probable cause to seize and detain the automobile nor to arrest either plaintiff. Specifically finding that both plaintiffs were falsely arrested and the vehicle improperly detained, the trial court criticized the investigation conducted by the Michigan State Police:
 

 "Apparently this was a statewide investigation. People were arrested in various parts of at least the three counties. Oakland was involved, Macomb may haye been involved, Wayne County was involved. And here two cars of precisely the same — I do not know precisely the same make, but at least configuration in which some exchange between them could be made, suddenly found themselves on exactly the same day within 120 feet, in the same lot. All without explanation, an absolute mystery which was never explained and which I am expected to believe is the result of a coincidence of some kind where the King vehicle just happened to be there and, lo and behold, Investigator Baley figured it all out: that these parts were interchangeable. And, therefore, the King vehicle parts ended up on the Raudabaugh car. I should have told Mr. King about what Officer Conn testified to, because I would have liked to have heard his reaction. And, I would have
 
 *247
 
 liked to have known what he thought of those circumstances. How could his car have been the subject of parts transferred to the Raudabaugh car when the Raudabaugh car was complete long before — or Officer Conn said the Raudabaugh car was complete long before the King vehicle was stolen and, had a factory-type paint job. Presumably the quarter inch nicks would have been hidden. Presumably where tar was not shown. And this is most unsatisfactory, I cannot emphasize that enough. But I cannot decide this phase of the case on suspicion, just as I believe that the officers should not have acted on suspicion.
 

 "One last word about the seizure of the vehicle. So it was said by Miss Turner that there was an ongoing undercover investigation. And, therefore, it would not have been proper to obtain a warrant because the investigation would have been jeopardized. But, that ongoing undercover investigation ended on October 2nd, 1979, at least as far as Mr. Raudabaugh was concerned when Officer Conn came into the place with other officers and indicated he was a policeman. That does not offer any excuse why, if they were interested in the car as Sergeant Beals indicated they were, why they could not have had a warrant for the seizure of that car, together with all the other warrants that had been prepared on that day. Or for service for execution on that day. Sergeant, of course, had a very good reason for no warrant being available or having been sought or issued: Sergeant Conn didn’t think there was any reasonable grounds. No probable cause. Said it was all conjecture and speculation as far as Raudabaugh’s vehicle was concerned. And that’s the reason the warrant was not issued.
 

 "But why Sergeant Beals gave the order or the request for seizure of the car, and why Sergeant Baley executed that request so preemptorily and so faithfully is, indeed, the mystery in this case.”
 

 On appeal, defendants raised four issues. First, they contend that the trial court erred in finding that plaintiff Alfred Raudabaugh was falsely ar
 
 *248
 
 rested, asserting that a valid warrant had been issued. Essentially, defendants maintain that evidence was not presented that Sergeant Baley exercised bad faith in seeking the issuance of an arrest warrant.
 

 The trial court specifically found that the warrants for Alfred Raudabaugh’s arrest were issued solely because of the prosecutor’s reliance on Sergeant Baley’s assertions. While a complaining witness is immune from liability for false arrest where a valid complaint was issued,
 
 [2]
 
 this immunity does not extend to instances where the complaining witness does not act reasonably: for example, when he knew, or should have known, that, were it not for his mistake, the arrest warrant would not have been issued.
 
 [3]
 
 The record supports the trial court’s findings that the warrants did not operate to insulate defendants from liability for false arrest, as Sergeant Baley personally secured the warrants based on false, unsubstantiated information. Of interest to the instant matter is
 
 Rupright v Muskegon Circuit Court
 

 [4]
 

 where the Michigan Supreme Court held:
 

 "The declaration filed sufficiently charges defendant with false imprisonment and with abuse of civil process. When plaintiff shows by his affidavit that he was arrested on a
 
 capias
 
 at the instance of Wassell, that the same was without probable cause upon the part of Wassell and that the proceeding was subsequently voluntarily dismissed, he makes a
 
 prima facie
 
 case of false imprisonment.”
 

 Secondly, defendants assert that, since probable
 
 *249
 
 cause existed for an investigatory stop of the automobile operated by Josephine Raudabaugh, the trial court erred in holding that plaintiffs’ vehicle was illegally seized and detained.
 

 Sergeant Baley testified that on October 2, 1979, he observed Josephine Raudabaugh leave her home, enter the automobile, and drive away. The investigating officer, Sergeant John Conn, admitted that he did not have probable cause to obtain a search warrant for the vehicle on the day of the seizure. The record does not indicate that Sergeant Baley had greater knowledge than Sergeant Conn. The trial court’s finding that plaintiffs’ vehicle was improperly seized and detained was neither clearly erroneous nor against the great weight of the evidence. Of particular significance is the fact that the Michigan State Police had been investigating Alfred Raudabaugh for months concerning alleged car thefts and, particularly, had knowledge since July of 1979 regarding the transaction which led to his acquisition of the Pontiac Firebird automobile.
 

 Defendant Michigan State Police argues that the trial court erred in holding it vicariously liable for the intentional torts (false arrest) committed by one of its employees, Sergeant Duane Baley. Under MCL 691.1407; MSA 3.996(107), a governmental agency is immune from tort liability if the activity causing damage or injury was in the exercise of a governmental function.
 
 [5]
 
 In order to state a claim against a governmental agency, a plaintiff must allege facts in avoidance of governmental immunity.
 
 [6]
 
 _
 

 
 *250
 
 Based on the Supreme Court’s peremptory order in
 
 Wavro v Michigan
 

 [7]
 

 and the concurring opinion in
 
 Zmija v Baron,
 

 [8]
 

 8
 
 we are constrained to hold that defendant Michigan State Police is vicariously liable for the intentional torts committed by Sergeant Baley, since, in arresting both plaintiffs, Baley was acting within the scope of his employment as a detective sergeant of the Michigan State Police.
 

 Plaintiff Alfred Raudabaugh cross appeals from the verdict of no cause of action rendered in favor of defendants on his malicious prosecution claim.
 
 [9]
 
 As the following passage from the trial court’s oral opinion reveals, the trial court found that the evidence was insufficient to establish that Sergeant Baley acted maliciously in charging Alfred Raudabaugh with receiving and concealing stolen property with a value over $100:
 

 "I’ve said that I thought that the seizure of the vehicle was improper. I said I thought that the arrest of Mrs. Raudabaugh was false and improper. And, I’ve said that I thought that the arrest of Mr. Raudabaugh was false and improper. Was it, however, malicious? I think it was awfully close to being malicious. And if we could have gone on with a freer examination for a short while longer, we could have discovered whether it was truly malicious or not.
 

 "I was particularly interested when some attempt was made at that, and Officer Beals started to quote me from various decisions. And which, I think, would have been faced, with and which I think perhaps confronts plaintiffs who attempt to show a malicious prosecution. That was certainly a poor prosecution, it was an ill-
 
 *251
 
 founded prosecution. But I am not convinced that it was malicious. I will have to have greater testimony and more convincing testimony it was malicious. Certainly the matters that Ms. Buckfire regards as weighing towards malice, I regard giving the plaintiff more credibility then the defendant deserves, but I don’t think it was malicious.”
 

 The elements of malicious prosecution are: (1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) the proceeding terminated in favor of the accused; (3) the defendant lacked probable cause for instituting or continuing the proceeding; and (4) in commencing or continuing the criminal action the defendant was actuated by malicious motives.
 
 [10]
 
 It is evident that plaintiff Alfred Raudabaugh established three of the four required elements, namely: defendant, lacking probable cause, commenced a criminal action against plaintiff, Alfred Raudabaugh which terminated in his favor. It is his contention that the trial court erred in holding that Sergeant Baley did not act maliciously in his investigation of the case and subsequent commencement of a criminal action.
 

 In his treatise on torts, Professor Prosser discussed the required element of "malice”.
 

 "Unlike probable cause, the question of "malice” is to be determined by the jury, unless only one conclusion may reasonably be drawn from the evidence. The defendant’s improper purpose usually is proved by circumstantial evidence. The plaintiff must establish malice in addition to the absence of probable cause; but, since there can be no legitimate purpose in a prosecution
 
 *252
 
 unless there is an honest belief in the guilt of the accused, it is generally agreed that the lack of probable cause may give rise to an inference of malice, sufficient to carry the question to the jury. Although it has been doubted that good motives may ever coincide with absence of reasonable grounds for suspicion, most courts have recognized that the two are not necessarily inconsistent, and have held that the jury may reject the inference if it sees fit. The advise of counsel is evidence tending to negative malice by proving honest belief and good faith, and may be accepted as sufficient by the jury. The termination of the prosecution in favor of the accused of course affords no evidence that the defendant had an improper purpose in commencing it.”
 
 [11]
 
 (Footnotes omitted.)
 

 Writing for a unanimous Supreme Court in the nineteenth century case of
 
 Hamilton v Smith,
 

 [12]
 

 Justice Benjamin Graves elaborated upon the element of malice in the context of a malicious prosecution suit:
 

 "But supposing the want of probable cause to be made out, it is then requisite to ascertain whether there was malice. For if it does not appear that the prosecution was malicious as well as without probable cause, again the action must fail, and it is possible, though very unusual, for a prosecution to be commenced or pursued without probable cause and at the same time without malice. * * * The question of malice unlike that of probable cause is exclusively for the jury. The term is not used in this form of action in the sense often ascribed to it. It is quite comprehensive and includes many phases of wrong motives and conduct. There may be ill will, malevolence, spite, a spirit of revenge, or purpose to injure without cause, but it is not necessary that there should be. If the prosecution is willful, wanton or reckless, or against the prosecutor’s sense of duty and right, or for ends he knows or is
 
 *253
 
 bound to know are wrong and against the dictates or public policy, it is malicious. And in the present case, supposing it to be found that the prosecution was without probable cause and that the purpose in prosecuting was to trump up or extort something for the defense in the action for divorce, rather than to uphold and honestly and in good faith enforce the criminal law, then the prosecution was malicious.
 

 "Malice may be proved by direct evidence or it may be inferred from circumstances, and generally it may be inferred from the want of probable cause, though the latter can never be presumed or inferred from the most express malice.”
 

 While we find this to be a close issue, we are unable to conclude that the trial court’s specific finding that the element of malice was absent was either clearly erroneous or against the great weight of the evidence. It is noteworthy that Sergeant Baley only became involved in the investigation of the case when Sergeant Larry Beals, a few hours before plaintiff Josephine Raudabaugh was stopped and arrested, asked Baley to assist in the investigation of plaintiffs’ automobile. At trial, Baley testified that after the automobile was detained, he conversed with a witness, James McCoy, who agreed to testify that Alfred Raudabaugh had purchased a stolen "front clip”, which was a part of plaintiffs’ Pontiac Firebird.
 
 [13]
 
 This testimony was sufficient to permit a finding that Baley believed' that Alfred Raudabaugh had committed a felony
 
 *254
 
 and, thus, did not act maliciously in commencing a criminal action against Alfred Raudabaugh. Consequently, we affirm the trial court’s verdict of no cause of action on the malicious prosecution claim.
 

 Affirmed.
 

 [1]
 

 The court rule governing this cause of action is GCR 1963, 757.
 

 [2]
 

 Tillman v Beard,
 
 121 Mich 475, 477; 80 NW 248 (1899).
 

 [3]
 

 Hollis v Baker,
 
 45 Mich App 666, 670; 207 NW2d 138 (1973); 32 Am Jur 2d, False Imprisonment, § 47, p 108;
 
 Maliniemi v Gronlund,
 
 92 Mich 222, 227-228; 52 NW 627 (1892).
 

 [4]
 

 207 Mich 385, 387; 174 NW 138 (1919).
 

 [5]
 

 Willis v Nienow,
 
 113 Mich App 30, 33; 317 NW2d 273 (1982);
 
 Layton v Quinn,
 
 120 Mich App 708, 712; 328 NW2d 95 (1982).
 

 [6]
 

 McCann v Michigan,
 
 398 Mich 65, 77; 247 NW2d 521 (1976);
 
 Keenan v Secretary of State,
 
 103 Mich App 82, 84; 302 NW2d 602 (1981).
 

 [7]
 

 407 Mich 891; 284 NW2d 125 (1979).
 

 [8]
 

 119 Mich App 524, 534, fn 2; 326 NW2d 908 (1982). Accord,
 
 Armstead v Jackson,
 
 121 Mich App 239, 244; 328 NW2d 541 (1981);
 
 Graves v Wayne County,
 
 124 Mich App 36; 333 NW2d 740 (1983).
 

 [9]
 

 Under MCL 600.2907; MSA 27A.2907, a plaintiff is entitled to have his damage award trebled.
 

 [10]
 

 Weiden v Weiden,
 
 246 Mich 347, 352; 224 NW 345 (1929); 15 Michigan Law & Practice, Malicious Prosecution, § 1, pp 573-574. See
 
 Friedman v Dozorc,
 
 412 Mich 1; 312 NW2d 585 (1982), for a discussion of the application of a malicious prosecution action to civil proceedings.
 

 [11]
 

 Prosser, Torts (4th ed), § 119, pp 848-849.
 

 [12]
 

 39 Mich 222, 228-229 (1878).
 

 [13]
 

 When McCoy did not appear at the first preliminary examination, the case against Alfred Raudabaugh was dismissed. As a result of being assured that McCoy would appear in court, Baley sought, and obtained, a second warrant for Raudabaugh’s arrest. At the second preliminary examination, held on January 21, 1980, McCoy again did not appear. On the basis of Baley’s testimony, Raudabaugh was bound over to Recorder’s Court on the offense of receiving and concealing stolen property over $100. On February 29, 1980, the trial judge granted Raudabaugh’s motion to quash the information. Thereupon, the Pontiac Firebird was immediately returned to Raudabaugh.