Sheila **ARBOUR,** Personal Representative of the Estate of Victor Arbour, Plaintiff–Appellant,

v.

Eugene **JENKINS,** et al., Defendants–Appellees.

No. 89–1747.

United States Court of Appeals, Sixth Circuit.

Argued April 5, 1990.

Decided May 15, 1990.

Lance A. Fertig (argued), Birmingham, Mich., for plaintiff-appellant.

Ellen G. Ritteman, Asst. U.S. Atty., Detroit, Mich., Scott R. McIntosh (argued), U.S. Dept. of Justice, Appellate Div., Barbara Herwig, U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, D.C., for defendants-appellees.

Before KEITH and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Sheila Arbour appeals the district court's order granting the United States' motions (1) to substitute itself as the proper defendant and (2) to dismiss the action. For the following reasons, we reverse the district court's order.

## I.

Plaintiff-appellant Sheila Arbour brought this wrongful death action on behalf of her deceased husband, Victor Arbour, against Eugene Jenkins, John T. Smith, Edward Novak, and Charles Kehoe, all employees of the Detroit Post Office. The decedent was employed at the Detroit Post Office from 1982 until his death on December 30, 1985. Appellant alleges that postal supervisors Jenkins, Smith, and Kehoe, along with Labor Relations Representative Novak, unfairly and unjustifiably harassed her husband with employment-related disciplinary actions. Sheila Arbour alleges

that, as a result of these disciplinary actions, her husband "suffered from delayed physical functions caused by negative stimulus thus causing decedent to be involved in a head on collision with a truck." The factual background is as follows:

On May 1, 1982, Victor Arbour, a veteran, received a career appointment to the Detroit Post Office as an automobile mechanic. Arbour thereafter became a member of the American Postal Workers Union ("Union"), the postal workers' exclusive bargaining agent. On December 8, 1982, the Postal Service issued a proposed notice to terminate Arbour's employment due to his failure to disclose his full criminal record on his employment application. On December 21, 1982, management and the Union entered into a grievance settlement which modified Arbour's removal to a thirty-day suspension. Labor Relations Representative Novak signed the settlement agreement on management's behalf.

On March 5, 1983, Arbour was promoted to body fender repairman. On September 28, 1983, the Postal Service again issued a proposed notice to terminate Arbour due to his excessive absenteeism and his absences without permission. Arbour's supervisor, Eugene Jenkins, issued the removal notice. Arbour filed a grievance with the Union appealing the removal action. On November 4, 1983, management and the Union entered into a second grievance settlement which modified the removal to a thirty-day suspension. This grievance settlement, termed a "Last Chance" settlement, placed Arbour on notice that he had to alleviate his attendance-related problems.

On February 22, 1984, Postal Service officials notified Arbour that his scheduled salary increase would be withheld because he had failed to meet the requirements of his position. On April 24, 1984, Arbour received another proposed termination notice for his absences without permission. The decedent filed a grievance with the Union regarding the proposed removal. Postal Service supervisor Kehoe affirmed the proposed notice of removal on May 23, 1984. Management and the Union, however, reached a grievance settlement on

June 11, 1984, which rescinded Arbour's proposed removal. Meanwhile, on May 25, 1984, Postal Service officials again withheld Arbour's scheduled salary increase due to the decedent's alleged failure to meet his job requirements.

On June 18, 1984, Arbour received yet another proposed termination notice for his absences without permission. The termination was affirmed by supervisor Kehoe on July 10, 1984. Arbour thereafter filed a grievance appealing his removal, but the grievance was denied at the final step of the grievance procedure on August 21, 1984. Arbour appealed the June 18, 1984 removal notice to the Merit Systems Protection Board ("Board").

On October 31, 1984, a Board hearing was held. Arbour testified on his own behalf, called witnesses, and presented evidence. On December 12, 1984, the Board reversed the June 18, 1984 removal action and reinstated Arbour with back pay. The Board determined that Arbour had properly notified Postal Service supervisors of his absences, adding that Arbour had acute personal problems during the relevant time period. The Board concluded, however, that Arbour had failed to advise his supervisors of his emotional problems, thereby precluding any recovery on Arbour's handicap discrimination claim.

On November 8, 1985, the Postal Service issued a warning letter to Arbour for an absence without permission. Later that day, while driving home from work in his personal automobile, Arbour was involved in an automobile accident. Arbour died on December 30, 1985, from the injuries sustained in the accident.

On April 3, 1987, Arbour's widow, the plaintiff-appellant, filed a workman's compensation claim with the Department of Labor for death benefits. The Department of Labor denied Arbour's workman's compensation claim on October 6, 1987, after determining that the injuries sustained on November 8, 1985 (and the decedent's death on December 30, 1985) were not employment related. The Department of Labor affirmed its decision on reconsideration on December 21, 1987.

On December 30, 1987, two years after her husband's death, Sheila Arbour filed a tort action in state court against Eugene Jenkins, John T. Smith, Edward Novak, and Charles Kehoe. The appellant claimed that these employees had committed common law torts which were responsible for her husband's death. Mrs. Arbour alleged that, during the two years preceding the automobile accident, the appellees had taken various actions which had caused her husband much emotional distress ultimately leading to a mental collapse causing the decedent's fatal accident. The appellant specifically alleged that these employees: filed incorrect reports regarding Mr. Arbour's absences from work; wrongfully denied Mr. Arbour leave time; required Mr. Arbour to take a safety course following a job-related eye injury; referred Mr. Arbour to a substance abuse treatment program; and locked Mr. Arbour in a maintenance garage.

The defendants, represented by the United States, removed the suit from state court to federal court in February, 1988. In November, 1988, the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act") went into effect. By its terms the Westfall Act "appl[ies] to all claims, civil actions, and proceedings pending on ... the date of the enactment of this Act." Pub.L. No. 100–694, § 8(b), 102 Stat. 4563, 4565–66. Accordingly, the provisions of the Westfall Act apply to this action even though Mrs. Arbour filed suit before the Westfall Act was enacted.

In January, 1989, acting pursuant to the Attorney General's delegation of authority, the United States Attorney for the Eastern District of Michigan certified that the defendants had been acting within the scope of their employment with regard to the events underlying the appellant's cause of action. Once such a certification is made the Westfall Act provides that the suit "shall be deemed an action against the United States" under the Federal Tort Claims Act ("FTCA") and "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1), (d)(2) (1989). The United States thereupon moved the district court to substitute it as the proper defendant. The United States also moved to dismiss the suit due to Mrs. Arbour's failure to exhaust administrative remedies under the FTCA.

Mrs. Arbour opposed the United States' motions as premature. Though the defendants had provided answers to written interrogatories, Mrs. Arbour asked the district court to allow her additional discovery before acting on United States' motions. The appellant suggested that additional discovery was necessary to determine if the defendants had been acting within the scope of their employment. Mrs. Arbour also suggested that further discovery was necessary to determine whether the defendants' actions had been discretionary.

On May 26, 1989, the district court granted the government's motion to substitute the United States as the proper defendant. 713 F.Supp. 229. The district court thereafter dismissed the suit for appellant's failure to exhaust administrative remedies. The district court observed that "the plain language of the various provisions" of the Westfall Act and the FTCA make the United States the sole defendant and require that Mrs. Arbour comply with the FTCA's administrative exhaustion requirement. The district court, holding that a scope certification by the Attorney General, or his designee, is conclusive for purposes of substitution under the Westfall Act, rejected the appellant's demand for additional discovery.

Arbour thereafter filed a timely notice of appeal.

## II.

◼ The Federal Employees Liability Reform and Tort Compensation Act of 1988 (Westfall Act), Pub.L. No. 100–694, 102 Stat. 4563 (codified as amended at 28 U.S.C. § 2679 (Supp.1989)) became law when President Reagan signed the Act on November 18, 1988. The law amended the Federal Tort Claims Act to provide for the substitution of the United States as a defendant in an action where a federal employee is sued for monetary damages aris-

ing from a common law tort allegedly committed by the federal employee acting within the scope of his or her employment. *See Sowell v. American Cyanamid Co.*, 888 F.2d 802, 805 (11th Cir.1989). The Act provides the exclusive remedy for injuries to persons or property arising from the tortious acts of federal employees acting within the scope of their employment. *Id.*

The Act, in pertinent part, provides:

(d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694 at § 6.

The Westfall Act is Congress' response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which limited a federal official's absolute immunity from tort claims to situations where the official's actions were "within the outer perimeter of an official's duties and ... discretionary in nature." *Id.* at 300, 108 S.Ct. at 585. Congress saw the *Westfall* decision as an erosion of the common law tort immunity formerly available to federal employees.

In enacting the 1988 Act, Congress found that the Supreme Court's decision in *Westfall v. Erwin* seriously erode[d] the common law tort immunity previously available to federal employees and create[d] an immediate crisis involving the prospect of personal liability, and that the threat of protracted personal tort litigation would seriously undermine the morale and well-being of federal employees, impede the ability of agencies to carry out their missions, and diminish the vitality of the Federal Tort Claims Act as the proper remedy for federal employee torts. Congress also recognized that

plaintiffs could also benefit from the new legislation in that they would have an administrative claim against the government which could be resolved without costly litigation; and perhaps most importantly, the government would be able to pay any judgment whereas an individual federal employee might be judgment proof.

*Sowell v. American Cyanamid Co.*, 888 F.2d at 805 (citation omitted).

■ Though Mrs. Arbour challenges the constitutionality of the Westfall Act, the Eleventh Circuit has noted: "The great weight of authority upholds the constitutionality of [the Westfall Act]. Several statutes have been passed in recent years substituting the United States as a defendant for its employees or contractors and denying the right of recovery against the individual defendants...." *Id.* The Westfall Act, by its terms, applies to cases not yet final and unreviewable. Section 8(b) of the Westfall Act establishes that the Act "shall apply to all claims, civil actions, and proceedings pending on, or filed on or after, the date of the enactment of this Act." It is therefore clear that Congress specifically provided that the Westfall Act was to apply to suits pending at the time of its enactment. *Lunsford v. Price*, 885 F.2d 236, 240 (5th Cir.1989); *Yalkut v. Gemignani*, 873 F.2d 31, 34 (2d Cir.1989). "The fact that the statute is retroactive does not make it unconstitutional [because] a legal claim affords no definite or enforceable property right until reduced to final judgment." *Sowell v. American Cyanamid Co.*, 888 F.2d at 805 (citing *In re Consol. United States Atmospheric Testing Litig.*, 820 F.2d 982 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988); *Hammond v. United States*, 786 F.2d 8 (1st Cir.1986)).

The heart of the Westfall Act lies in Sections 5 and 6. Section 5 amends 28 U.S.C. § 2679(b) to provide that the FTCA's remedy against the United States for negligent or wrongful acts by government employees acting within the scope of their employment "is exclusive of any other civil action or proceeding for money damages

... against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1) (1989). Section 6 implements section 5's exclusive-remedy provision by authorizing the Attorney General to issue a "scope certification." A "scope certification" is a certification that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose...." 28 U.S.C. § 2679(d)(1), (d)(2). The Attorney General has delegated this authority to United States Attorneys who make the scope certification determinations in consultation with the Department of Justice. *See* 28 U.S.C. § 510 (Attorney General's delegation authority); 28 C.F.R. § 15.3 (1989). When the Attorney General, or his designee, certifies that the employee's actions were within his or her scope of employment, the Westfall Act mandates that the suit "shall be deemed an action against the United States" under the FTCA and "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1), (d)(2).

The United States Attorney, in the instant action, certified that the defendants were acting within the scope of their employment in connection with the events underlying Mrs. Arbour's suit. The district court then substituted the United States as the defendant and dismissed Arbour's action for failure to exhaust administrative remedies. The district court determined that the Attorney General's scope certification was conclusive and nonreviewable. Appellant argues, *inter alia*, that the district court erred by deeming the "scope certification" conclusive and by denying her the opportunity to conduct additional discovery relevant to whether the defendants were indeed acting within the scope of their employment.

■ The district court determined that the Attorney General's scope certification was entitled to conclusive effect under the Westfall Act (thereby precluding judicial examination). The district court's determination is erroneous. *See Petrousky v. United States*, 728 F.Supp. 890, 891 (N.D. N.Y.1990) (new Justice Department guidelines provide for judicial review of scope certifications). Where a statute is clear on its face, its plain meaning should be given effect without reference to legislative history. *United States v. James*, 478 U.S. 597, 606, 106 S.Ct. 3116, 3121–22, 92 L.Ed.2d 483 (1986). However, when reading the scope certification provisions of the Westfall Act as a whole, as we are required to do, *see Carchman v. Nash*, 473 U.S. 716, 743 n. 11, 105 S.Ct. 3401, 3415 n. 11, 87 L.Ed.2d 516 (1985), the Act is ambiguous regarding the reviewability of the Attorney General's scope certification. We must therefore look to the legislative history for guidance. *See Newman v. Soballe*, 871 F.2d 969, 972 (11th Cir.1989).

Representative Frank of Massachusetts, the sponsor of the Westfall Act, noted that a plaintiff would still have the right to contest the certification under the Westfall Act if he or she thought the Attorney General was certifying without justification.[1] In response, a representative of the Department of Justice agreed that a plaintiff may challenge a certification, adding that the certification would be reviewable by a court.[2]

Accordingly, a plaintiff who is dissatisfied with a scope certification may challenge the certification judicially.[3] The district court therefore erred by finding the scope of employment certification nonreviewable and by, accordingly, denying Arbour's discovery request.

■ Whether an employee's actions are within the scope of his employment for purposes of the Westfall Act is an issue that must be determined in accordance with the law of the state where the incident

---

1. *See Legislation to Amend the Federal Tort Claims Act: Hearing Before the Subcommittee on Administrative Law and Governmental Relations of the Committee on the Judiciary,* 100th Cong., 2d Sess. 128 (April 14, 1988) (statements of Representative Frank).

2. *See id.* at 133 (statements of Deputy Assistant Attorney General Robert L. Willmore).

3. However, a scope certification "*shall conclusively establish* scope of office or employment *for purposes of removal.*" 28 U.S.C. § 2679(d)(2) (emphasis added).

occurred. 28 U.S.C. § 1346(b). *See generally Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *Cronin v. Hertz Corp.*, 818 F.2d 1064, 1065 (2d Cir.1987); *Nasuti v. Scannell*, 792 F.2d 264, 266 n. 3 (1st Cir.1986). Accordingly, under Michigan law an employee is acting within the scope of his employment if he is engaged in the service of his master. *Barnes v. Mitchell*, 341 Mich. 7, 67 N.W.2d 208 (1954). The determinative question is whether the employee's actions are within his authority. *See, e.g., Leitch v. Switchenko*, 169 Mich.App. 761, 765–66, 426 N.W.2d 804 (1988); *Burch v. A & G Assoc., Inc.*, 122 Mich.App. 798, 804, 333 N.W.2d 140 (1983). Furthermore, an employee's actions may be within the scope of his or her employment even if the actions constitute intentional torts. *See, e.g., Raudabaugh v. Baley*, 133 Mich.App. 242, 350 N.W.2d 242 (1983) (false arrest); *Ray v. City of Detroit*, 67 Mich.App. 702, 242 N.W.2d 494 (1976) (holding city liable for intentional tortious conduct by a city employee). The scope of employment issue is regarded as one of law, not fact. *Hoston v. Silbert*, 681 F.2d 876, 879 (D.C.Cir.1982).

■ Mrs. Arbour's complaint arguably describes actions within the employees' scope of authority: denial of leave time; submission of absentee forms erroneously reporting decedent's absences; disciplinary actions concerning Arbour's absences; referrals to safety and substance abuse programs; and discouraging Arbour from parking in spaces reserved for the handicapped. However, the appellant also claims that the "defendant and/or co-defendants" intentionally locked Mr. Arbour in a maintenance garage. This allegation, if proven, may be sufficient to preclude application of the Westfall Act provisions.

■ On remand, the district court must determine whether the defendants' actions were within their scope of employment. *See generally Bajdek v. Toren*, 382 Mich. 151, 169 N.W.2d 306 (1969) (under the "dual purpose" doctrine, an employee who acts in furtherance of his employer's interests "may be within the scope of his employment even though, at the same time, he

is doing something to serve a purpose of his own." *Id.* at 154, 169 N.W.2d 306.). Furthermore, verbal harassment and intimidation have been viewed as being within the scope of supervisory employment. *See generally Mundy v. Southern Bell Tel. & Tel. Co.*, 676 F.2d 503 (11th Cir.1982); *Manale v. City of New Orleans*, 673 F.2d 122, 126 (5th Cir.1982).

Because the district court erred in finding the United States Attorney's scope certification conclusive and nonreviewable, we REVERSE the district court's order and REMAND this action to the district court.