35 F.3d 565
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ida HOUSMAN, Plaintiff-Appellant,
v.
MEIJER, INC., a Michigan corporation, d/b/a Meijer's Thrifty
Acres; County of Oakland; Sheriff John F.
Nichols; and Deputy Sean Stoner,
Defendants-Appellees.
 Nos. 93-1794, 93-2141.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1994.
 
 Before: KENNEDY and SILER, Circuit Judges; and SPIEGEL, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Ida Housman appeals the District Court's grant of summary judgment in favor of defendants--a retail store, two law enforcement officers, and a county--in this tort and civil rights action. She also appeals the District Court's award of attorney fees. For the reasons stated below, we affirm the District Court's grant of summary judgment and reverse the District Court's award of attorney fees.
 
 I.
 
 2
 Plaintiff brought this lawsuit against Meijer, Inc., a retail department store ("Meijer"), and Deputy Sean Stoner of the Oakland County Sheriff's Department, Oakland County Sheriff John F. Nichols and the County of Oakland ("the county-defendants"), seeking compensatory damages for the alleged maltreatment she received from Meijer employees and Deputy Stoner while shopping at Meijer.
 
 
 3
 At the time of the incident in question, plaintiff was a sixty year-old woman with Parkinson's disease. She was taking medication called Sinamet and Lanoex every two hours. On November 30, 1990, at approximately 10:00 a.m., she went to the Meijer store in Rochester, Michigan, to buy some clothes. She informed employees in the clothes department, including a manager, that she had Parkinson's disease and was on medication and that her unusual behavior should not be taken to be drunkenness. She proceeded to try on clothes and received permission from a manager to take more than three items of clothing into the fitting room with her at a time. She made this request because she had difficulty moving back and forth between the fitting room and the clothes racks. She tried on clothes until early evening.
 
 
 4
 During this time, Meijer employees were generally pleasant and helpful to plaintiff. At around 2:00 p.m., plaintiff took a break and bought a piece of fruit. She received permission from a Meijer employee to leave the clothes she selected in the fitting room. When she returned to the fitting room, however, her clothes had been put back on the clothes racks by a Meijer employee and so she began trying on clothes all over again.
 
 
 5
 By mid-afternoon, some employees became concerned with plaintiff's behavior. She was walking around unsteadily, appeared dazed, and was reportedly leaving the fitting room and going into the shopping area wearing only undergarments. On one occasion, she was observed sitting on the fitting room floor in a daze and another time she was sitting on the fitting room bench trembling and bobbing back and forth. Apparently due to a turnover in employees or lack of communication between them, some employees were unaware of plaintiff's condition and of the permission granted plaintiff to take extra clothes into the fitting room. Some employees believed she was intoxicated and that she was a "bag lady." At approximately 6:00 p.m., a Meijer security officer called the Oakland County Sheriff's Department to report a disorderly person in the store.
 
 
 6
 Deputy Stoner soon arrived at the store and was directed to the fitting room. He testified in deposition that he was not told of plaintiff's Parkinson's disease. Mrs. McGlathery, a manager of the store, testified that she told the deputy that plaintiff had told her that she had Parkinson's disease. At the fitting room, he told plaintiff to come out as soon as she was dressed. When she was dressed, Deputy Stoner entered the room and asked her why she was bothering customers. Plaintiff said that she was not and asked Mrs. McGlathery to confirm this, which she did. Plaintiff testified in deposition that she told him she had Parkinson's disease. Deputy Stoner told her to come with him. Plaintiff appeared not to understand his command and she began to shake and jerk her arms about. She became upset and spoke loudly. Stoner testified that she pulled away from him and flailed her arms about. He said he believed she posed a threat to herself and others around her. He then handcuffed her hands in front of her, told her she was under arrest for disorderly conduct, and led her through the store to the store's security office. Plaintiff protested that her movements were not to resist but rather were caused by her disease and that handcuffs hurt her. Due apparently to her disease, plaintiff was shaking and jerking her wrists in the handcuffs.
 
 
 7
 In the security office, Deputy Stoner questioned plaintiff without removing her handcuffs. She was upset and annoyed with Deputy Stoner. Meijer's security officer suggested several times that the handcuffs be removed but Deputy Stoner said he would not remove them "until I find out who she is." At times during the questioning, Deputy Stoner accused plaintiff of being a drug addict and of lying about having Parkinson's disease. He threatened her with loss of driving privileges and incarceration if she did not "behave." He took plaintiff's purse, dumped the contents on the table, and looked for some form of identification.
 
 
 8
 Eventually, Deputy Stoner took the handcuffs off. She immediately grabbed her medication container and ingested several pills. Deputy Stoner had a Meijer employee call the store pharmacist about the medication. Meanwhile, Deputy Stoner phoned plaintiff's house and asked her friends who lived there to come to Meijer to assist plaintiff. They came to the store. The deputy also called the Sheriff's Department and, after returning to the table, he seemed to have calmed down. The employee who called the pharmacist returned and reported to Deputy Stoner that the pharmacist said that one could overdose on the medication and suffer hallucinations. Deputy Stoner said he thought plaintiff was hallucinating and possibly suffering from an overdose. He then called an ambulance which took plaintiff to a hospital. She was released to her daughter-in-law at the hospital without treatment. Meijer declined to press any charges.
 
 
 9
 Plaintiff sued Meijer in negligence; Meijer and Deputy Stoner for false arrest, false imprisonment, assault and battery, and intentional infliction of emotional distress;[1] and the county-defendants for gross negligence and deprivation of federal civil rights.
 
 
 10
 After hearing oral arguments, the District Court granted Meijer's summary judgment motion in its entirety and granted partial summary judgment to the county-defendants. With respect to Meijer, the court ruled that (1) Meijer breached no duty of care in calling the police, and (2) because Meijer acted properly in calling the police, Meijer cannot be held liable for the intentional torts committed by Deputy Stoner. With respect to the gross negligence count against the county-defendants, the court held that (1) the county is immune from tort liability as a governmental entity, (2) Sheriff Nichols is immune as a high executive official and (3) Deputy Stoner did not act with gross negligence and is therefore individually immune from tort liability. The District Court denied the intentional tort claims against the county-defendants on the ground that gross negligence is the only exception to governmental immunity from tort liability. The court initially denied summary judgment as to the federal civil rights claims brought under section 1983, but granted it on a later date.
 
 
 11
 Meijer subsequently filed a motion for costs and the county-defendants filed a motion for costs and attorney fees. The court granted the motions and awarded costs to Meijer and the county-defendants. The court also awarded $3000 in attorney fees to the county-defendants. Plaintiff appeals the District Court's grant of summary judgment as to all defendants and appeals the grant of attorney fees to the county-defendants.
 
 II.
 
 12
 Plaintiff appeals the District Court's grant of summary judgment in Meijer's favor on plaintiff's claim of negligence. Plaintiff appeals no other issues concerning Meijer. Plaintiff argues that, because she informed Meijer of her medical condition, Meijer owed her a duty to tell her that she was acting inappropriately and Meijer negligently failed to do so. Meijer was also negligent, she argues, by returning her clothes to the racks after she asked if she could leave them in the fitting room. Finally, she argues that Meijer was negligent in calling the police without cause, by failing to tell Deputy Stoner of plaintiff's condition and by misrepresenting that plaintiff was acting disorderly and indecently.
 
 
 13
 We review a district court's grant of summary judgment de novo. Jones v. Tennessee Valley Auth., 948 F.2d 258, 261 (6th Cir.1991). Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where, looking to the record as a whole, a reasonable mind could come to only one conclusion, there is no genuine issue of material fact and summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986).
 
 
 14
 The District Court relied on Nrecaj v. Yono, 434 N.W.2d 210 (Mich.App.1988) in which the Michigan Court of Appeals held that, provided business-owners act in good faith, they owe no duty of care to invitees in deciding to contact the police to investigate a perceived problem with an invitee. See also Hall v. Pizza Hut of America, Inc., 396 N.W.2d 809, 811 (Mich.App.1986). Liability may attach, however, where the proprietor directs the arrest of a customer and the officer acts upon the proprietor's judgment. Id. (citing Maliniemi v. Gronlund, 52 N.W. 627 (Mich.1892)).
 
 
 15
 Applying these principles to this case, we agree with the District Court that Meijer is entitled to summary judgment. The record is clear that once Deputy Stoner arrived, he took charge of the situation and therefore Meijer cannot be held liable for his actions. The question then is whether Meijer acted in good faith in contacting the police and in reporting the situation to Deputy Stoner. There is no indication in the record that Meijer's employees acted in bad faith. Indeed, plaintiff concedes that Meijer may have had good intentions but argues that, regardless of intentions, Meijer breached a duty of care owed to plaintiff. As Nrecaj holds, however, a proprietor who acts in good faith owes no duty to its customers in deciding to call the police. Nrecaj, 434 N.W.2d at 211. Moreover, provided he acts in good faith, a proprietor is not required to provide full and fair information to the police once they arrive. See Hall, 396 N.W.2d at 811-12.
 
 
 16
 Nor can we agree with plaintiff's assertion that Meijer owed her a special duty of care because she told employees about her medical condition. Business-owners have long owed their customers a duty of care to maintain a safe establishment. In fulfilling that duty, they may need to accommodate particular customers who they know have special needs. However, under Michigan law, no duty of care is imposed on business-owners in their good faith request for assistance from the proper authorities. Contrary to plaintiff's assertion, Meijer's knowledge of her medical condition does not counsel against invoking the aid of the police. We hold that Meijer owed plaintiff no duty to avoid calling the police to handle the situation and is therefore not liable for the actions taken by Deputy Stoner.
 
 III.
 
 17
 Plaintiff appeals the District Court's judgment holding Deputy Stoner immune from plaintiff's tort claims.[2] The District Court held that Deputy Stoner is not liable in tort except for gross negligence and further held that the evidence could not support a finding of gross negligence.
 
 
 18
 Under Michigan law, police officers who caused injury during the course of their employment are immune from tort liability if they were acting or reasonably believed they were acting within the scope of their authority, their agency was engaged in a governmental function, and they were not grossly negligent.[3] See MICH.COMP.LAWS Sec. 691.1407(2). In Smith v. Department of Public Health, 410 N.W.2d 749 (Mich.1987), aff'd, 491 U.S. 58 (1989), the Supreme Court of Michigan held that governmental immunity from tort liability applies to intentional torts. Plaintiff contends that the holding of Smith is limited to municipalities, agencies or other entities but that individual state officers have no immunity from intentional tort liability. We disagree. The court in Smith held, after a lengthy discussion, that section 7 of the governmental immunity act, MICH.COMP.LAWS Sec. 1407, which grants governmental immunity from tort liability, makes no exception to immunity for intentional torts. 410 N.W.2d at 777. The present case also involves section 7 of the governmental immunity act. Although Smith involved a suit against an agency and not an individual, the court's interpretation of "tort liability" in the act clearly applies to individual immunity contained in the same section of the act. Thus, provided the requirements set forth in the act are met, Deputy Stoner is immune from intentional tort liability.
 
 
 19
 Deputy Stoner was on duty when he responded to a report of disorderly conduct. He acted for the purpose of resolving that situation. It is clear, and plaintiff does not dispute, that Deputy Stoner acted within the course of his employment, within the scope of his authority, and for an agency performing a governmental function. The only question then is whether he acted with gross negligence.
 
 
 20
 We conclude that he did not. Deputy Stoner received a report of disorderly conduct. When he arrived, a Meijer security officer and a manager told Stoner that plaintiff had been trying on clothes for eight hours, acting disorderly, bothering customers, walking around in undergarments, and taking extra clothes into the fitting room. The security officer further told him that they wanted to press charges.
 
 
 21
 When Deputy Stoner confronted plaintiff, she began to jerk about and flail her arms. We credit for summary judgment purposes plaintiff's testimony that she told Deputy Stoner that she had Parkinson's disease, that she told him her behavior was due to her medical condition rather than uncooperativeness, and that she told him the handcuffs would hurt her. Even under these circumstances, we cannot conclude that it was grossly negligent to handcuff her. She had been there all day, was creating a disturbance, and was not in control of her physical movements. Deputy Stoner had authority to aid Meijer in removing her from the fitting-room area and since she could not control her movements, he had to restrain her in order to escort her from the scene. Moreover, the pain that might be caused by her movements in the handcuffs did not make their use inappropriate. Had he tried to control her using his hands or other force, she may have been hurt or humiliated more.
 
 
 22
 Nor was he grossly negligent in the security office by leaving the handcuffs on and searching through her purse. Deputy Stoner needed to determine who she was, whether she had done anything wrong and whether she needed medical attention. She had said herself that she was overly-medicated. He looked through the contents of her purse for identification and information about her medication. He also called her house to notify her relatives of the situation. He received information from a pharmacist that the medication could cause hallucination and overdose. He then called an ambulance for her. Leaving her in handcuffs may have been unnecessary at that time but, since she continued to jerk her body, it was not grossly negligent. Nor was calling an ambulance notwithstanding her protest against it. Deputy Stoner's conduct toward plaintiff may have been less than courteous, at times rude, but it was not, under the circumstances, "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH.COMP.LAWS Sec. 691.1407(2)(c). We conclude, therefore, that the District Court properly granted summary judgment in defendants' favor on plaintiff's state law tort claims.
 
 IV.
 
 23
 Plaintiff also appeals the District Court's order granting summary judgment on the section 1983 claim against Deputy Stoner alleging that Deputy Stoner used excessive force in violation of the Fourth Amendment. Excessive force claims are to be analyzed under the Fourth Amendment's "objectively reasonable" test. Graham v. Connor, 490 U.S. 386, 394-95 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. For reasons similar to those concerning plaintiff's gross negligence claim, we conclude that Deputy Stoner did not use excessive force against plaintiff and her claim must therefore fail.
 
 V.
 
 24
 Plaintiff challenges the District Court's judgment holding that the Sheriff and Oakland County ("the county") are not liable for Deputy Stoner's alleged constitutional violations. Plaintiff argues that issues of material fact exist as to whether the county's custom or policy of hiring, training and supervising its law enforcement officers caused plaintiff's injury and resulted from deliberate indifference. However, because we conclude that plaintiff's constitutional rights were not violated by Deputy Stoner, the county cannot be liable for inadequate training. See Hancock v. Dodson, 958 F.2d 1367, 1376 (6th Cir.1992) (holding that "[b]ecause the only city police officer present committed no constitutional violation, the city cannot be liable for failure to train its police officers.").
 
 VI.
 
 25
 Finally, plaintiff appeals the District Court's order awarding attorney fees to the county-defendants pursuant to 42 U.S.C. Sec. 1988. A successful defendant is entitled to attorney fees under that statute only if the plaintiff's claim was frivolous. Although we affirm the District Court's judgment against plaintiff, in view of the factual and legal issues involved, we cannot conclude that plaintiff's decision to bring this action was patently unreasonable. We conclude that the District Court erred in awarding attorney fees to the county-defendants.
 
 VII.
 
 26
 For the reasons stated above, the District Court's grant of summary judgment in favor of defendants is AFFIRMED and the District Court's award of attorney fees is REVERSED.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting be designation
 
 
 [1]
 Plaintiff voluntarily dismissed the counts against Meijer for intentional infliction of emotional distress and assault and battery. The only issue concerning Meijer that plaintiff appeals is the negligence count
 
 
 [2]
 Plaintiff only appeals the order as it pertains to Deputy Stoner. She does not appeal the District Court's judgment in favor of Sheriff Nichols and Oakland County on the state law claims
 
 
 [3]
 MICH.COMP.LAWS Sec. 691.1407(2) provides:
 [E]ach officer ... of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the officer ... while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:
 (a) The officer ... is acting or reasonably believes he or she is acting within the scope of his or her authority.
 (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
 (c) The officer's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.