UNITED STATES of America, Plaintiff,

v.

A LEASEHOLD INTEREST IN PROPERTY LOCATED AT 850 S. MAPLE, ANN ARBOR, WASHTENAW COUNTY, MICHIGAN, Defendant,

v.

Charlotte JUIDE, Claimant.

No. 90–CV–71173.

United States District Court,
E.D. Michigan, S.D.

April 6, 1992.

Julie Kunce Field, Mark D. Mitshkun, Paul D. Reingold, Nicholas J. Rine, Michigan Clinical Law Program, University of Michigan Law School, Ann Arbor, Mich., for plaintiff.

Julie A. Caroff, Asst. U.S. Atty., Detroit, Mich., for defendant.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On July 3, 1991, Charlotte Juide filed a motion, in which she sought attorneys' fees as a claimant under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, for "the time spent contesting the Government's summary seizure of [her] interest without prior notice or hearing, in violation of the U.S. Constitution and the Local Court Rules...." Juide's Brief at 1. The Government has submitted its opposition papers which seek a denial of her motion. On January 23, 1992, an evidentiary hearing was held on the issue of the sufficiency and reasonableness of her fee request.

For the reasons that have been set forth below, this court will grant in part and deny in part Juide's application for attorney fees.

## I.

In April 1990, the Government commenced this civil *in rem* forfeiture proceeding against a leasehold interest which was located within a public housing complex at 850 South Maple in Ann Arbor, Michigan.[1] In its Complaint, the Government alleged that the property had been used by its occupants to facilitate the distribution of cocaine, and, by virtue of 21 U.S.C. § 881(a)(7),[2] it was subject to forfeiture. Acting on the authority of a search warrant that had been issued by a federal magistrate on April 23, 1990, the United States Marshal and other law enforcement officials took possession of the apartment four days later and summarily evicted Juide and her two children.

Juide subsequently filed a claim and a series of motions with this court in an effort to obtain complete relief from the action that had been unilaterally undertaken by the Government, including the right to gain lawful entry into, and reacquire possession of, her Ann Arbor apartment. On July 30, 1990, this court issued an order which, in essence, determined that (1) Juide's constitutional rights to due process had been violated, and (2) she had been improperly evicted from her home. As a result, the magistrate's warrant was vacated, and Juide was reinstated into her Ann Arbor dwelling. *U.S. v. 850 South Maple*, 743 F.Supp. 505, 511 (E.D.Mich. 1990).

---

1. The facts in this case have been well documented. *See U.S. v. 850 South Maple*, 743 F.Supp. 505, 506–07 (E.D.Mich.1990). This court, among others, has opined that important constitutional issues were raised by the Government's policy decision to seize homes and leasehold interests which were being used or had been used to facilitate the commission of a felony drug transaction. *Id.* at 508–09. ("Clearly, an intrusion of the Government into the home of a citizen, whether it is paid for with public funds in the form of a government subsi-

dy, rented, or privately owned, presents a compelling issue of substantial interest to the public").

2. 21 U.S.C. § 881(a)(7) provides, in pertinent part, for the forfeiture of "real property, including any right, title and interest (including leasehold interest) in the whole of any lot or tract of land ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of [a criminal act]."

Thereafter, the Government, having unsuccessfully sought to obtain any judicial review by this court of its July 30th order, filed an appeal to the Sixth Circuit Court of Appeals (Sixth Circuit). However, on May 29, 1991, Juide and her family moved from the 850 South Maple apartment, and this action was dismissed on June 11, 1991 with the consent of the parties because of mootness.

## II.

In her motion, Juide argues that she is entitled to attorney fees[3] under the EAJA which reflect, in part, the cost of living because (1) she is a prevailing party, and (2) the Government lacked substantial justification for its seizure of her apartment. In its opposition papers, the Government contends that (1) Juide voluntarily vacated the apartment and, hence, she cannot be a prevailing party for purposes of the EAJA, (2) its position in this controversy was substantially justified, and (3) the amount of her request for fees is unjustifiably excessive.

## A.

The EAJA provides that a court shall award attorney fees to "a prevailing party ... in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Congress' objective in its passage of the EAJA was to "encourage relatively impecunious private parties to challenge unreasonable or oppressive governmental behavior by relieving such parties of the fear of incurring large litigation expenses." *Spencer v. N.L.R.B.*, 712 F.2d 539 (D.C.Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984) (citation omitted).

■ The initial inquiry under the EAJA is whether a litigant constitutes the "prevailing party" in the dispute. 28 U.S.C. § 2412. A prevailing party is one who "achieve[s] some of the benefit in bringing the action," *Sullivan v. Hudson*, 490 U.S. 877, 887, 109 S.Ct. 2248, 2255, 104 L.Ed.2d 941 (1989)[4], or who prevails on a key issue in the litigation, to such an extent that the legal relationship between the parties has been substantially altered. *Texas State Teachers Assn. v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

■ The Supreme Court has stated that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792–93, 109 S.Ct. at 1493. A prevailing party need not have succeeded on each and every issue that was raised in the law suit. However, a petitioner must receive some relief on the merits of the claim. Success on procedural or evidentiary matters will not suffice. *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987); *See Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

■ Juide claims to be the prevailing party in this action because she received "substantive relief [from this court] that changed the legal relationship between the parties" following her challenge of the Government's seizure and eviction. Juide's Reply Brief, at 1. Moreover, she contends that the court order of July 30, 1990 resulted in "a limitation on the Government's procedures in forfeiture cases and a change in [her] substantive legal status." Juide's Brief, at 9 (emphasis omitted). It is her belief that this request falls into the realm which Congress intended the statute to cover:

---

**3.** Juide seeks attorney fees for "the limited portion of her attorney's time spent on the successful challenge to the Government's procedures ... [i.e.,] the decision holding that the Government's warrant was bad, that the pre-hearing seizure was illegal, and that the apartment was still the claimant's alone." Juide's Brief at 4.

**4.** According to the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983), the standards for determining a prevailing party under 42 U.S.C. § 1988 "are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party."

[t]his forfeiture action is the prototypical case to which the EAJA applies. Here the U.S. Government ... exercised a truly awesome power against individuals who were totally lacking in resources. With no warning, a welfare family in public housing was forcibly evicted by a small army of police. [She] was literally awakened with a gun in her face, and was forced to dress and to use the bathroom with federal agents present.... [Juide] and her family were then locked out of their own home and left on the street to fend for themselves.

. . . .

Their successful challenge to the Government's policy (of summary seizures in forfeiture cases), and the substantive relief they won (permanent occupancy rights pending a forfeiture trial), fit exactly what Congress wanted the Government to pay for when Congress passed the EAJA.

*Id.* at 6–7.

The Government counters with the argument that Juide is not entitled to the status of a prevailing party merely because she was successful on a procedural point in this lawsuit. Furthermore, it contends that

[d]espite the best efforts of [Juide] to characterize the motion to vacate the seizure warrant as a proceeding separate and distinct from the civil forfeiture case, the motion was in fact but one of a series filed as part of claimant's defense against the civil forfeiture action. Although resolution of the motion turned on an issue of constitutional law, the constitutional nature of that issue did not transmute it into a claim on the merits in the civil forfeiture litigation.

Government's Response Brief, at 6. Moreover, the Government submits that this court should not declare Juide to be a prevailing party for purposes of the EAJA because, among other things, she voluntarily abandoned her claimed property interests prior to a final resolution of this controversy.

The Government's position (to wit, that, when taken as a whole, Juide's victory on the constitutionality of the summary evic-tion is a mere portion of the overall seizure action) has some merit. The underlying dispute in this litigation involved a seizure action of real property pursuant to federal civil forfeiture provisions which allow the Government to seize a leasehold interest. There is no question that, with proper compliance with the provisions of the statute and due process considerations, the Government may seize property which they have probable cause to believe is involved in illegal drug activities. 21 U.S.C. § 881(a)(7).

However, as this court later found, the Government did not have a right to the *immediate* seizure of the leasehold property in the absence of exigent circumstances and compliance with due process concerns. It was upon this basis that Juide sought to regain an immediate occupancy of her apartment. Therefore, although the Government's action may have been technically accurate in proceeding with the civil *in rem* action, it did not succeed in preventing Juide from reacquiring the immediate possession of her home on 850 South Maple.

Neither party can rightly debate that the ultimate goal for each side was to gain possession of the apartment. Juide makes it clear that a right of immediate reentry is what she sought to obtain through this court. The Government's explanations for these type of seizures are premised on the idea that an advanced notice to the occupant of the subject dwelling would defeat its effort to eliminate the infiltration of illicit drugs into this community:

According to the Government, seizure was necessary because of the likelihood that drug activity would continue on the premises unless there was a prompt and *immediate seizure.*

*U.S. v. 850 South Maple,* 743 F.Supp. 505, 511 (E.D.Mich.1990) (emphasis added).

With this as the mutual goal of the instant litigation, there can be no dispute as to Juide's victory. The longer term occupancy of the unit was not resolved, but the question about who would be entitled to its immediate occupancy was settled by this court.

The Government may rightly contend that a civil forfeiture action is not an avenue by which a party may vindicate due process violations. The claimant's position in this civil forfeiture action represents an effort to protect her interest in the subject property from forfeiture. A vacation of a seizure warrant does not necessarily destroy the Government's right to seek the forfeiture of the property. Rather, it limits the ability of the Government to immediately occupy the premises. However, the Government must actually win the forfeiture action before it may displace Juide. *Id.* at 510–11.

Contrary to the Government's position, Juide's subsequent decision to leave the premises does not invalidate the significance of her victory. As a direct result of the July 30th directive, Juide prevailed on her claim that she had a right to occupy the Ann Arbor apartment until the date that she chose to voluntarily move into other housing on May 29, 1991. The relief that she achieved was more than merely "the moral satisfaction of knowing that a federal court concluded that [her] rights had been violated." *Hewitt v. Helms*, 482 U.S. 755, 762, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987). Instead, she was able to obtain the complete right to occupy the subject leasehold, pending a final determination of the issues in controversy by the court in this forfeiture action.

Therefore, because Juide was granted the substantive and immediate right to the leasehold interest, her successful challenge to the arguably oppressive Government behavior satisfies the policy goals of the EAJA. Hence, Juide must be declared to be the prevailing party in this matter.

### B.

■ The EAJA also requires the Government to demonstrate that its legal position was substantially justified, and forbids the issuance of fees to a claimant whenever "special circumstances make an award unjust." 28 U.S.C. § 2412. The Government need only show that its position was "justified in substance or in the main—that is, justified to a degree that would satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The Government must also show that it had a reasonable basis in law and fact to undertake the challenged action. *Id.*; *S & H Riggers & Erectors, Inc. v. O.S.H.R.C.*, 672 F.2d 426, 430 (5th Cir. 1982).

■ Congress adopted the substantial justification standard in an effort to balance the requirements of the Government to fully execute the laws of the land with the public interest in encouraging citizens to vindicate their rights in a court of law. H.R.Rep. No. 1418, 96th Cong., 2d Sess. § 10, *reprinted in* 1980 U.S.Code Cong. & Admin.News (96 Stat.) 4953, 4984, 4989. The conditional fee-shifting approach of the EAJA operates as a "safety value ... to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." *Id.* at 4990; *Jackson v. Bowen*, 807 F.2d 127, 128 n. 3 (8th Cir. 1986). In order for the Government to sustain its "substantially justified" argument, all of its positions must have been reasonable. *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

■ In support of its position in this controversy, Juide argues that (1) the *ex parte* summary seizure of the property on 850 South Maple by the Government was an unconstitutional act which violated established law and the local rules of this court, and (2) a utilization of the "reasonable person" test supports her position that members of the general community and the legal profession believe the Government's conduct to have been distasteful. For these reasons, she contends that the Government's pre-notice seizure of the leasehold fails to rise to the level of substantial justification as required by the statute.

In opposition, the Government submits that, inasmuch as it was substantially justified in the commencement and prosecution of the forfeiture action, its pre-notice seizure was also justified in the main. The

Government asserts that the drug activity in and around the Ann Arbor public housing complex necessitated the immediate seizure of those apartment units that were engaged in this illicit conduct. Inasmuch as the Government's compliance with the civil forfeiture statute is without challenge, it argues that the pre-notice nature of the seizure and eviction also constitutes a reasonable enforcement of the laws. The Government also contends that any noncompliance with Local Rule 35[5] was a good faith challenge to the legality of the Rule, and its applicability to governmental actions that have been endorsed by federal statute.

Reliance on the forfeiture provisions alone cannot justify the no-notice summary seizure of a person's private home. Moreover, a court would be hard pressed to find such conduct to have been reasonable on the basis of law or fact. This court views such a summary seizure of a person's home, in the absence of exigent circumstances and without notice or an opportunity to challenge the action, as a patently intrusive and unjustifiable act. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971). Raiding a home and displacing its residents without notice or an opportunity to be heard so clearly cuts against our notions of a citizen's reasonable expectations of privacy and the sanctity of the home that to characterize such government action as "novel but credible extension[s]" or interpretations of the law turns our longstanding traditions of fair play and constitutional protections against intrusive conduct on its head. Thus, no reasonable effort to fight the "war on drugs" would justify such an egregious intrusion into an individual's inviolate constitutional right to be free at home from an unwarranted government invasion.

The Sixth Circuit recently considered the substantial justification question in *United States v. Winchester Mun. Utilities*, 944 F.2d 301 (6th Cir.1991):

[w]hat is significant is that a United States Court of Appeals accepted an argument identical to the one the [G]overnment had been making here several years earlier. We are not prepared to say that a considered legal interpretation adopted by one of our sister circuits is so far beyond the pale that it cannot even be considered "substantially justified."

*Id.* at 306.

The Government argues that

[g]iven the lack of authority in this Circuit, and the split in authority in other circuits, with one circuit explicitly approving the very position undertaken by the government in this case, the holding of the Sixth Circuit in *Winchester Utilities* compels the conclusion that the United States was substantially justified in its litigating position for purposes of the EAJA.

Government's Supplemental Brief, at 7. It submits that this language from the Sixth Circuit substantially justifies its position inasmuch as another Circuit has determined that the pre-notice seizure of a leasehold is not a due process violation. *See, United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., Ft. Lauderdale, Florida,* 803 F.2d 625 (11th Cir.1986); *See also, United States v. 26.075 Acres, More or Less Located in Swift Creek Township, Wake County, North Carolina,* 687 F.Supp. 1005 (E.D.N.C.1988).

In *Rio Vista Blvd.,* the Eleventh Circuit Court of Appeals (Eleventh Circuit) determined that a home, owned by a corporation, could be seized under the forfeiture statute without any pre-seizure notice. 803 F.2d 625. In reaching its conclusion, the court relied upon case law which authorized such seizures on the theory that a prior notice would undermine the drug enforcement efforts to which the seizure was directed. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40

---

**5.** Local Rule 35 (since replaced by LR 140.1) required that, in *in rem* actions, the Court Clerk must issue a summons which directs any person having control of intangible property to show cause why it should not be placed under the control of the court. An exception exists where "the plaintiff ... certifies that exigent circumstances make review by the court impracticable ..." Rule 35, Local Rules, E.D.Mich. (1990).

L.Ed.2d 452 (1974); *26.075 Acres,* 687 F.Supp. 1005 (E.D.N.C.1988), *modified* (on other grounds), 866 F.2d 1538 (4th Cir.1989) (husband and children of a woman involved in narcotics transactions, did not have standing to claim ownership interest in the subject real property).

However, *Rio Vista Blvd.* is inapposite to the case before this court because it (1) related to a corporate citizen's interests in a residence rather than the physical displacement of a private individual from her home, (2) was fully litigated, and (3) dealt with a real property interest rather than the immediate possession of an intangible leasehold interest. In summary, we are not dealing with a corporation or a dispute over extended interests. Instead, this case involves a citizen who, along with her children, was forced out of her home in a public housing project, and onto the streets of Ann Arbor.

Thus, deference to the decisions of a sister circuit on an issue will bind this court only if those pronouncements do not fly in the face of reason or when they are based on similar factual situations. Here, the Eleventh Circuit decision in *Rio Vista Blvd.* is clearly distinguishable and, thus, it will not assist this court in the resolution of the instant dispute.

Such a characterization is especially true when one considers the harsh criticism that the Government's conduct garnered following its establishment of this no-notice seizure policy. *See* Juide's Brief, at Exhibits C–I. Furthermore, such proceedings by the Government have met with serious opposition in the Fourth Circuit Court of Appeals (Fourth Circuit). *See Richmond Tenants Organ., Inc. v. Kemp,* 956 F.2d 1300 (4th Cir.1992) (injunction against government from national policy of pre-notice seizures):

[w]hile the level of and type of drug trafficking in a particular location might amount to exigent circumstance warranting a summary eviction, the mere use or possession of narcotics would not in every case constitute an extraordinary situation permitting federal law enforcement officers to summarily remove all persons occupying the housing unit where the activity occurred.

*Id.*

Thus, the Government's contention that its actions were merely good faith attempts to challenge or interpret the forfeiture law are unfounded, and its contrary attempts are unpersuasive.

The arguments by the Government against the applicability of Local Rule 35 are misplaced. Even if this court was of the opinion that this Local Rule was not applicable to the Government in the instant case, the basic constitutional considerations would not be changed.[6] Despite any apparent legality of a forfeiture proceeding[7], every citizen continues to enjoy the right not to have her home invaded and seized without prior notice and an opportunity to be heard. This distinguishing factor makes the Government's simple filing of a forfeiture complaint into something much more significant.

Simply put, because the Government's act may not be viewed as reasonable, and the policy considerations weigh in favor of Juide and her expectations of privacy, the legality of a forfeiture proceeding cannot override the unwarranted behavior of those representatives of the federal government who forcibly evicted Juide from her home without prior notice. This court is not persuaded by the Government's attempt to demonstrate that its conduct was justified in the underlying litigation.

---

**6.** This position is readily supported by the Government's own statements in which it acknowledged that "the U.S. Attorney in this district does not intend in any future public housing forfeitures to evict tenants without the approval of the court following an adversarial hearing. Such a policy is in accord with the process that this Office follows in our nonpublic housing real estate seizures." Letter from Steven J. Markman, U.S. Attorney, to Hon. Julian Abele Cook, Jr. (June 8, 1990), Juide's Brief, at Exhibit D.

**7.** *See e.g. United States v. Certain Real Property at 4880 S.E. Dixie Highway,* 838 F.2d 1558 (11th Cir.1988) (seizure of hotel, restaurant, and boat); *United States v. One 1985 Chevrolet Corvette,* 914 F.2d 804 (6th Cir.1990) (forfeiture of vehicle requires only rebutted probable cause).

### III.

Attorney fees are recoverable under the EAJA "based upon prevailing market rates for the kind and quality of the services furnished" up to the maximum amount of $75 per hour. 28 U.S.C. § 2412(d)(2)(A). This amount may be adjusted upward if the court determines that a cost of living or other "special factor" justifies an increase. *Id.*

■ Juide seeks attorney fees for her counsel[8], who expended a total of 150.9 hours, at a statutory hourly rate of $75 plus a cost of living increase of $69 an hour to reflect the inflation rate since the passage of the EAJA, and a "special factors" enhancement of twenty percent (20%) for a total of $26,407.50.[9] She maintains that the requested amounts are reasonable for the legal work that was performed on her behalf in this cause.[10]

The Government protests any award of attorney fees because (1) the evidence fails to support the number of hours that Juide claims were expended by her counsel, (2) her attorneys' hourly rates are excessive, (3) the cost of living and "special factors" rates are inappropriate in this case, and (4) her lawyers' failure to maintain contemporaneous records demands a reduction or an outright denial of the fee request.

■ The court finds that the number of hours that were expended by Juide's lawyers are reasonable, especially in view of the complexity of civil forfeiture actions and the unique nature of the facts of this case. Despite its efforts, the Government has not persuaded this court that the number of hours expended by Juide's counsel was excessive or unreasonable.

On the other hand, the court rejects Juide's application for attorney fees which would compensate all four lawyers for the same activity.[11] Juide has failed to demonstrate to this court that the 20.7 hours expended for team "consultation" was justified. Instead, an award of one lawyer's work for that time (5.17 hours) is a more reasonable figure for the activity performed, and is warranted by the facts of this case.

■ The lawyer's failure to maintain detailed and contemporaneous billing records is a disfavored practice where an award of fees has been sought.[12] However, such a

---

8. Juide's counsel of record in the instant matter, and to which this fee petition applies, are Julie Kunce Field, Mark D. Mitshkun, Paul D. Reingold, and Nicholas J. Rine of the Michigan Clinical Law Program at the University of Michigan Law School in Ann Arbor (Program). These attorneys are affiliated with the University as Professors or Assistant Professors of Clinical Law. *See* Juide's Brief, at Exhibit A.

9. In the original petition, Juide requested a fee award totaling $25,270 which reflected 144.4 hours multiplied by an hourly rate of $175. Subsequently, her counsel submitted a correction of the hours expended as originally calculated. *See* Juide's Supplemental Brief, at 2, n. 3. This modification has been noted by the court, and Juide's petition will be considered as a request for $26,407.50 which reflects 150.9 hours multiplied by the suggested hourly rate of $175.

10. Juide also asks for an additional fee award for the 21.3 hours that were expended in preparing for the January 23, 1992 evidentiary hearing and subsequent briefing. Juide's Supplemental Brief, at 11; Reingold Affidavit.

Juide's application for the time expended by her counsel in preparing for the hearing and/or supplemental briefing is a reasonable request. However, in light of the admonitions by this court to counsel, all of whom were advised that the evidentiary hearing of January 23, 1992 would be limited to the issue of the reasonableness of the fees, and the insufficiency of information within Juide's initial petition, this court finds her request for fees to be inappropriate under the circumstances. An award of fees for work that is (1) repetitive and duplicative, and (2) against the directives of this court would be unreasonable. Hence, Juide's request for an award of attorney fees must be denied as to these additional hours.

11. According to Juide, the amount of time billed for "consultation by the entire team of lawyers" which involved "core strategizing or crucial decision-making ..." totaled 20.7 hours. *See* Juide's Supplemental Brief, at 3.

12. The court is not satisfied with the manner in which Juide's counsel maintained contemporaneous records and billing practices in this case. According to her attorneys, the Program typically maintains detailed time sheets for those matters which involve significant student interaction and to which the Program lawyers expect to seek reimbursement of fees. However, in this particular case, Juide submits that her lawyers failed to maintain such detailed time sheet records because (1) they were working exclu-

request is not fatal, especially if the court determines that the failure to keep such records was not a result of incompetence or bad faith. *See United States v. $12,248,* 957 F.2d 1513 (9th Cir.1991); *Harkless v. Sweeny Ind. School Dist.,* 608 F.2d 594 (5th Cir.1979).

Thus, the absence of detailed time records is unfortunate but, as it relates to the instant request, nothing more. This court is satisfied that Juide's attorneys were competent in their representation of her interests in this cause, and diligent in their efforts to seek immediate results. This court is confident that their reconstruction was made conservatively and in good faith.[13]

█ Juide also seeks an enhancement of the EAJA statutory rate of $75 per hour by $69 for the increase in the cost of living, which, if granted, would result in a fee award of $144 per hour.[14] The Government contests this proposed cost of living enhancement, and urges the court to (1) limit any increase to a maximum of $125 per hour which would reflect the average compensation for attorneys who practice within the Ann Arbor community, (2) tabulate any increase from the date of enactment of the EAJA in 1985, or (3) calculate any increase on the basis of the All Items portion of the Consumer Price Index.

The EAJA allows for an upward departure from the statutory rate of $75 per hour if the court finds that there has been an increase in the cost of living and where special factors warrant such a departure. In *Chipman v. Secretary of Health and Human Services,* 781 F.2d 545 (6th Cir. 1986), the court, in holding that it was not an abuse of discretion for the district court to decline to depart upward from the statutory rate, noted that Congress did not in-

crease the $75 per hour rate when it enacted the EAJA in 1985. However, the *Chipman* court did not discuss the statutory history or determine that it would be an abuse of discretion to increase the rate.

This court finds that an enhancement for cost of living is appropriate in this case. The *Chipman* position was, at best, dicta, and has been persuasively undermined by the majority of other circuits. *See e.g., Sierra Club v. Secretary of the Army,* 820 F.2d 513, 521 (1st Cir.1987); *Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 704–07 (2nd Cir.1987); *Allen v. Otis Bowen,* 821 F.2d 963 (3rd Cir.1987); *Ramon–Sepulveda v. INS,* 863 F.2d 1458 (9th Cir.1988). Thus, the cost of living will be calculated from the 1981 enactment of the EAJA.

█ Juide has also sufficiently convinced this court that the applicable rate upon which to calculate the cost of living increase is the Consumer Price Index "Other Services" index rather than the "All Items" index. Based on the information which has been provided to this court, the "Other Services" index appears to be the most accurate and conservative determinator of appropriate legal fees in the Detroit–Ann Arbor region.

The Government's contention that the hourly rate should not exceed $125 is not persuasive, given the affidavits filed by other lawyers in the same regional legal market, the award of higher fees to the Program in other legal proceedings, and the appropriateness of the submitted compensation survey by the Michigan Bar organization. *See* Juide's Brief, at Exhibits J–N; Juide's Supplemental Brief, at Exhibit E; Government's Supplemental Brief, at Exhibit A.

---

sively on the 850 Maple matter during the summer of 1990, to the exclusion of other cases or their academic responsibilities, (2) even if time sheets had been kept, they would not have identified the particular issue within a case being handled, and (3) the reconstruction of any time records involve a certain measure of subjectivity to which the court must determine its reasonableness. Juide's Supplemental Brief, at 4–5.

**13.** This court is also persuaded by the testimony of Robert Gillett, an Ann Arbor practitioner and Director, Legal Services of Southeast Michigan, who opined that the Program's fee request was "conservative" on the basis of his experience with similar litigation.

**14.** According to Juide, the $69 cost of living increase is based on the Consumer Price Index "Other Services" rate from the time of the EAJA's enactment in 1981.

Finally, an award of a special enhancement of 20% is not justified in this case. Although Juide argues that the adjustment for "special factors" is appropriate due to the expertise of her counsel, the emergency nature of the representation, and the need to ensure quality counsel in forfeiture cases, the circumstances of this case do not warrant any special factors adjustment. Any consideration by this court for the claimed extraordinary efforts and skills by Juide's counsel has already been noted and properly accounted for in a reasonable market rate for legal services. All of the evidence on the issue of fees points to a fee in the range of $150 an hour in this market.

Based upon the available information, the statutory requirements, and considerations of the cost of living, Juide's attorneys are entitled to be paid for 135.37 hours at an hourly rate of $144.

Accordingly, Juide's amended request for attorney fees is granted, and her attorneys are awarded a total sum of $19,493.26.[15] However, her request for a special enhancement, and for additional fees that were incurred in support of this motion subsequent to its initial filing is denied.

IT IS SO ORDERED.

---

15. This amount represents $144 per hour multiplied by 135.37 hours (150.9 hours expended, less 20.7 hours for hours billed by all four lawyers, plus 5.17 hours to compensate Juide's counsel for one-fourth of those excluded hours).