Charlotte JUIDE, Plaintiff,

v.

CITY OF ANN ARBOR, A. George Best, Robert Lane, Stephen J. Markman, and Tony P. Williams, jointly and severally, Defendants.

No. 93–CV–71762–DT.

United States District Court,
E.D. Michigan, S.D.

Dec. 15, 1993.

498

Douglas Spicer, Ypsilanti, MI, for plaintiff.

Stefani Carter, Asst. City Atty., Ann Arbor, Stephen Markman and Tony Williams, Asst. U.S. Atty., Detroit, MI, for City of Ann Arbor, Lane and Williams.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On July 6, 1993, two of the Defendants, Stephen J. Markman and A. George Best II, filed a Motion to Dismiss on the bases of absolute and qualified immunity, improper defendant, and failure to exhaust administrative remedies.[1] On July 30, 1993, the Plain-

---

1. The Defendants in this matter are the City of Ann Arbor, A. George Best II, Robert Lane, Stephen J. Markman, and Tony P. Williams.

tiff, Charlotte Juide, filed her opposition papers.

For the reasons that have been set forth below, this Court will grant the Defendants' motion in part.

## I

This case stems from *in rem* forfeiture proceedings that had been initiated by the Government against an apartment in Ann Arbor, Michigan. A synopsis of the background of this case is in order:

On April 23, 1990, the United States commenced [a] civil *in rem* forfeiture against the premises at 850 South Maple, in Ann Arbor, Michigan, which consists of a public housing unit that had been leased to Charlotte Juide by the City's Housing Commission. The Complaint alleged that the Defendant property was used to facilitate the distribution of cocaine, a controlled substance, and was therefore subject to forfeiture under 21 U.S.C. section 881(a)(7).

On April 23, 1990, a federal magistrate signed a seizure warrant which authorized the immediate removal of Juide from her premises, and the seizure of the property by the United States Government. The Government's application for the warrant was supported by an affidavit from the Ann Arbor Police Department.

On April 27, 1990, the United States Marshall seized the apartment and evicted Juide and her two children. Juide and her family, who were asleep when they were awakened by the shouting of Government agents inside their apartment, were not given any prior notice of this action....

Juide and her children were given less than fifteen minutes in which to gather their belongings before they were removed from their apartment. An unidentified person with a video camera filmed the activities in the apartment. In addition, several members of the news media were waiting outside the apartment unit with additional cameras when Juide existed.

*United States v. Leasehold Interest in Property at 850 S. Maple, Ann Arbor, Mich.,* 743 F.Supp. 505, 506–07 (E.D.Mich.1990). In response to the seizure of her apartment, Juide brought several motions, including one to vacate the seizure. The Court granted the requested relief, finding that "Juide's due process rights were violated when the federal magistrate issued the warrant for seizure prior to holding a hearing in which she could appear and challenge the Government's position that probable cause existed." *Id.* at 511. On June 11, 1991, the forfeiture action was dismissed for mootness because Juide had moved from the premises.

Nearly two years later, Juide filed a lawsuit pursuant to 42 U.S.C. § 1983, claiming, *inter alia,* that Markman and Best had (1) violated her constitutional rights, (2) conspired to violate her federal and state constitutional rights, (3) conspired to invade her privacy, and (4) intentionally inflicted emotional distress upon her. (Complaint at 7–10.)

Markman and Best have moved to dismiss Juide's claims pursuant to Federal Rule of Civil Procedure 12(b). Their motion is now before the Court for resolution.

## II

Markman and Best seek the protection of absolute immunity from any liability to Juide because they were acting within the "advocatory" scope of their duties at the time of the challenged incident. They also assert the defense of qualified immunity, arguing that it was not clearly established law at the time of their alleged violation of Juide's constitutional rights that (1) due process prohibited the issuance of a seizure warrant without prior notice and an opportunity to contest the probable cause issue and (2) the Government was precluded from initiating a forfeiture action whenever a claimant may risk self-incrimination by filing a claim for the property. Moreover, Markman and Best submit that they are improper defendants under 28 U.S.C. § 2679 with regard to Juide's state tort claims for invasion of privacy and intentional infliction of emotional distress. Finally, they argue that if the United States was substituted as the proper defendant, all of the pending state claims must be dismissed because of Juide's failure to exhaust her administrative remedies.

In her opposition papers, Juide takes issue with the positions of Markman and Best, arguing that (1) these two individuals are not entitled to absolute or qualified immunity, and (2) the United States should not be substituted as a defendant in this case because 28 U.S.C. § 2679 is unconstitutional.

### III

■ ·Federal Rule of Civil Procedure 12(b) permits a party to raise several defenses to a complaint, including the failure to state a claim upon which relief can be granted. In order for·a complaint to be dismissed on this ground, a ·court must conclude "beyond [a] doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Carver v. Bunch,* 946 F.2d 451, 452 (6th Cir.1991) (quoting *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam)). In making its decision, a court must liberally construe the pleadings in favor of the non-moving party and accept as true all well-pleaded allegations. *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 392 (6th Cir.1975).

### A. *Immunity From Suit*

■ Every person acting under color of state law is subjected. to liability under 42 U.S.C. § 1983 for the deprivation of any other person's rights, privileges or immunities secured by the United States Constitution. However, this statute does not abolish common law immunities. *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951) (Congress did not intend § 1983 to abrogate immunities well grounded in history and reason); *Buckley v. Fitzsimmons,* — U.S. —, — — —, 113 S.Ct. 2606, 2612–13, 125 L.Ed.2d 209 (1993) (Congress would have specifically stated if it intended .to abolish well established immunities).

### 1. *Absolute Immunity*

■ ▪ Recognizing the need for government officials to be able to make impartial or imaginative decisions without the threat of per-.sonal liability for actions that were taken pursuant to their official duties, the United States Supreme Court extended the doctrine of absolute immunity to certain government officials under limited circumstances. *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (agency attorney); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judge); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (legislators); *Tenney,* 341 U.S. at 367, 71 S.Ct. at 783 (legislators); *but see, Mitchell v. Forsyth,* 472 U.S. 511, 520, 105 S.Ct. 2806, 2812, 86 L.Ed.2d 411 (1985) (absolute immunity not extended to Attorney General from suit for damages arising of allegedly unconstitutional conduct in performing national security functions). This immunity only applies when the official is acting within the core functions of the office. which is determined to fall within the auspices of this doctrine. *See Nixon v. Fitzgerald,* 457 U.S. 731, 755, 102 S.Ct. 2690, 2704, 73 L.Ed.2d 349 (1982).

■ In determining whether an official is entitled to absolute immunity, the Supreme Court employs a functional approach. *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542–543, 98 L.Ed.2d 555 (1988) (functional approach applied to state court judge); *see also Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (functional test applied to prosecutors). Under this method, a court "examine[s] the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and ... seek[s] to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* Some of the factors that a court may consider under this test include whether 1) there exists a historical or common law basis for the immunity in question; 2) the performance of the function subjects the official to a risk of vexatious litigation; and 3) there are other checks that help to prevent abuses of authority from going unredressed. ·*Mitchell,* 472 U.S. at 521–522, 105 S.Ct. at 2812–2813; *see also Burns,* 500 U.S. at — — —, 111 S.Ct. at 1942–44.

■ In any event, the burden is upon the official who seeks absolute immunity to demonstrate that the need is justified by overriding considerations of public policy. *Burns,* at ——, 111 S.Ct. at 1939. Even if the immunity traditionally applies to a given function, the court must consider "whether § 1983's history and purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Buckley,* —— U.S. at ——, 113 S.Ct. at 2613 (citing *Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 2825, 81 L.Ed.2d 758 (1984)).

■ It is well established that prosecutors are entitled to absolute immunity for the initiation and pursuit of a criminal prosecution. *Imbler,* 424 U.S. at 420, 96 S.Ct. at 990. Hence, prosecutors are absolutely immune from liability in civil suits which challenge their decisions (1) to initiate prosecutions or (2) concerning the conduct of the trial and presentation of evidence. *Auriemma v. Montgomery,* 860 F.2d 273, 277 (7th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989). This immunity covers quasi-judicial functions such as actions taken in the courtroom as well as decisions regarding obtaining, reviewing, and evaluating evidence. *Id.* at 278; *see Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3rd Cir.1992) (citations omitted). However, when an attorney acts in an "investigative" or "administrative role," he or she is entitled only to qualified immunity. *Auriemma,* 860 F.2d at 278.

In *Burns,* the Supreme Court held that absolute immunity extends to a prosecutor's participation in a probable cause hearing for the issuance of a search warrant. *Burns,* 500 U.S. at ——, 111 S.Ct. at 1941–1942. In that case, the complainant argued that the prosecutor violated his constitutional rights by participating in a probable cause hearing and giving legal advice to the police. The prosecutor raised absolute immunity as a defense. The Supreme Court agreed in part, noting that the doctrine should apply to his participation in the probable cause hearing because it was "intimately associated with the judicial phase of the criminal pro-

cess," namely, the issuance of a search warrant. *Id.,* at ——, 111 S.Ct. at 1942 (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995.) However, the Court was unable to identify an historical or a common-law basis upon which to extend the doctrine of absolute immunity for the giving of legal advice. *Id.,* 500 U.S. at —— ——, 111 S.Ct. at 1942–43. As a result, it declined to grant the prosecutor the protection of absolute immunity on this allegation. *Id.,* at ——, 111 S.Ct. at 1944.[2]

In *Butz,* the Supreme Court compared government administrative proceedings to criminal prosecutions and concluded that those agency officials who initiate such administrative proceedings are absolutely immune from civil liability for their decisions. 438 U.S. at 512–517, 98 S.Ct. at 2913–2916. The Court remarked that "the decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.* at 515, 98 S.Ct. at 2915.

Taking the lead from *Butz,* several courts subsequently found that government prosecutors possess absolute immunity from the imposition of damages for their acts or lack of action in civil matters. *See Schrob v. Catterson,* 948 F.2d 1402, 1411–13 (3rd Cir. 1991); *Ehrlich v. Giuliani,* 910 F.2d 1220 (4th Cir.1990) (absolute immunity extends to prosecutor who seeks to locate and preserve defendant's asset for forfeiture proceedings under Racketeer Influence and Corrupt Organization Act, 18 U.S.C. § 1963(e)); *Barrett v. United States,* 798 F.2d 565, 572 (2d Cir. 1986); *Murphy v. Morris,* 849 F.2d 1101, 1104–05 (8th Cir.1988).

In *Barrett,* the plaintiff initiated a suit against federal and state attorneys, contending that they contributed to the death of the decedent and conspired to deny the legal rights of the decedent's estate in a wrongful death action. 798 F.2d at 567. The estate appealed the district court's dismissal of the lawsuit as it related to the state attorney, claiming that the doctrine of absolute immunity had been improperly applied by the

---

**2.** The *Burns* Court ultimately found that qualified immunity sheltered the prosecutor from liability on this claim. *Burns,* 500 U.S. at —— ——, 111 S.Ct. at 1944–45.

lower court. *Id.* at 570. The four federal-attorney defendants also appealed the denial of absolute and qualified immunity. The Second Circuit affirmed. In its discussion relating to the application of absolute immunity to the state attorney, the court concluded that the doctrine applied to a government attorney's initiation of civil litigation in a state or federal court. *Id.* at 572. Specifically, it noted that

> [t]he controversial nature of the proceeding, the risk that a losing civil defendant will seek to retaliate by a suit attacking the propriety of the government attorney's conduct, and the existence of alternative safeguards against the attorney's misconduct (e.g., professional disciplinary proceedings, discovery and cross-examination) militate in favor of absolute immunity.

*Id.* It found these factors to call for the same result when the government attorney defends a civil suit because he continues to function in an "adversarial arena." *Id.*

Similarly, in *Schrob,* the Third Circuit Court of Appeals held that absolute immunity shields a government attorney from liability for actions taken in connection with the prosecution of a civil matter. 948 F.2d at 1411–12. The plaintiffs claimed that the Matawan Building Supplies Company had been illegally seized after the prosecutor filed an *in rem* civil action in an effort to obtain the company stock and other properties under the civil forfeiture provisions of 21 U.S.C. § 881(a)(6)–(7). *Id.* at 1405. The district court denied the prosecutor's motion to dismiss, finding that the doctrine of absolute immunity was inapplicable. *Id.* at 1406. The Third Circuit Court of Appeals disagreed, noting that under the guidance of *Butz,* "absolute immunity is extended to officials when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action." *Id.* at 1411 (citation omitted). In its discussion, the court divided the alleged misconduct into four actions, namely, "(1) creation and filing of the *in rem* complaint; (2) preparation of and application of the seizure warrant; (3) participation in the *ex parte* hearing for the issuance of the seizure warrant; and (4) ac-

tions surrounding the seizure, retention and release of the [company] property." *Id.* at 1409. The Third Circuit determined that the prosecutor was entitled to absolute immunity for all of his actions except the retention and release of property which fell within the breadth of administrative functions. *Id.* at 1416–17, 1419–20.

In reaching its decision, the *Schrob* court also declared that 1) "an Assistant United States Attorney is not only a prosecutor, but also the government's advocate in civil litigation;" 2) "there is no immunity from criminal liability for unlawful enforcement actions such as exceeding authority in executing a search warrant;" and 3) a prosecutor remains subject to professional discipline. *Id.* at 1412–13 (citations omitted).

■ Therefore, the fact that the alleged misconduct in the case at bar involved a civil, rather than a criminal, matter is not dispositive of the absolute immunity issue. Rather, the question is whether Markman and Best have carried their burden of establishing that they were functioning exclusively as "advocates" when they initiated the forfeiture proceedings and participated in the seizure warrant process.

Under *Schrob,* the contested actions fall within the parameters of the absolute immunity doctrine. At the time of the alleged violations, both of the Defendants were acting as government attorneys and pursuant to 21 U.S.C. § 881 which permits the forfeiture of

> [a]ll real property, including right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment. . . .

28 U.S.C. § 881(a)(7). As the *Schrob* court concluded, the initiation of an *in rem* forfeiture proceeding, the preparation of and application for a seizure warrant, and the participation in the seizure warrant hearing are closely related to the judicial process. Thus, it is clear that the actions of Markman and

Best fell within the scope of their official duties. This fact combined with the risk of vexatious litigation from civil defendants and the existence of professional disciplinary proceedings suggests that absolute immunity should protect these two Defendants from civil liability for their alleged unconstitutional actions.

In her opposition papers, Juide also avers that 21 U.S.C. § 881(a)(7), which ostensibly permits seizure of a leasehold without notice and opportunity to be heard, is unconstitutional, and as such, it provides no protection for either of these Defendants. In support of her argument, Juide points to the Court's findings in subsequent opinion, *United States v. Leasehold Interest in Property Located at 850 S. Maple*, 789 F.Supp. 1385 (E.D.Mich. 1992), which addressed the recovery of attorney fees for her successful challenge of the summary seizure of her property. (Juide's Response at 9.) In that opinion, the Court stated that

> [r]eliance on the forfeiture provisions alone cannot justify the no-notice summary seizure of a person's private home. Moreover, a court would be hard pressed to find such conduct to have been reasonable on the basis of law or fact. This court views such a summary seizure of a person's home, in the absence of exigent circumstances and without notice or an opportunity to challenge the action, as a patently intrusive and unjustifiable act.

789 F.Supp. at 1391. Juide urges the Court to retroactively apply this conclusion, as well as the determination that the forfeiture violated her due process rights, to bar the application of immunity.

■ A court should evaluate three factors when deciding if a newly enunciated rule should be applied retroactively: (1) whether the holding in question overrules clear precedent or decides an issue of first impression whose resolution was not clearly foreshadowed, (2) whether retroactive application will further the holding in question, and (3) whether retroactive application will produce inequitable results in individual cases. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971). All of these considerations militate

against the retroactive application of the conclusions in *850 S. Maple*, 743 F.Supp. at 505 and 789 F.Supp. at 1385. As the Court indicated, the question of whether pre-seizure notice and a hearing is required before the forfeiture of a leasehold interest was one of first impression. 743 F.Supp. at 509. Furthermore, the net result would be inequitable. In a case that was cited by Juide in her response to the current motion, the Supreme Court stated in dicta that

> [t]he courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree.... It is quite clear, however, that such broad statements as to the effect of a determination of constitutionality must be taken with qualifications. The actual existence of a statute, prior to such determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects—with respect to particular relations, individual and corporate, and particular conduct, private and official....

*Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318–319, 84 L.Ed. 329 (1940) (citations omitted). Although the actions of Markman and Best were subsequently determined to be unconstitutional, it would be unjust to hold them liable for their conduct when they acted in accordance with a facially valid statute at the time.

■ Furthermore, Markman and Best are entitled to absolute immunity for their opposition to Juide's motions which were subsequently addressed by the Court in *850 S. Maple*. Clearly, these actions are intimately related to the judicial process. However, Juide also alleges that Markman and Best conspired with police authorities in Ann Arbor, Michigan by giving advice to them, and in so doing, violated her constitutional rights. A prosecutor is not entitled to absolute immunity if he or she gives legal advice to

police officers. *Burns*, 500 U.S. at ——, 111 S.Ct. at 1944.

In summary, absolute immunity shields Markman and Best from civil liability for initiating the *in rem* forfeiture proceeding, preparing and filing the application of a seizure warrant, participating in the seizure warrant hearing, and defending the Government's actions in this Court. However, they are not entitled to absolute immunity on the alleged conspiracy claim for giving legal advice to the Ann Arbor police.

### 2. *Qualified Immunity*

■ The issue of whether an official is entitled to qualified immunity is a legal question which must be determined by the court. *See Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988) (citations omitted) (trial judge determines whether qualified immunity attaches to an official's actions); *Simkunas v. Tardi*, 930 F.2d 1287, 1291 (7th Cir.1991) (whether qualified immunity attaches to police officer's action is question for judge to resolve).

■ In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted), the Supreme Court established an objective qualified immunity standard which states that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." In essence, *Harlow* created a two-part test for qualified immunity. The reviewing court must determine (1) if the plaintiff alleged that a clearly established right had been violated, and (2) whether a reasonable public official should have known that the alleged misconduct violated that right. *Guercio v. Brody*, 911 F.2d 1179,

1184 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991). The plaintiff bears the burden to

plead facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard, would have known. The failure to so plead precludes a plaintiff from proceeding further, even from engaging in discovery, since the plaintiff has failed to alleged acts that are outside the scope of the defendant's immunity.

*Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987) (citations omitted.); [3] *see also Garvie*, 845 F.2d at 649; *Rich v. Mayfield Heights*, 955 F.2d 1092, 1097 (6th Cir.1992).

In *Ohio Civil Service Employees Association v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988), the Sixth Circuit Court of Appeals set forth a definition of a "clearly established right":

Our review of the Supreme Court's decisions and of our own precedent leads us to conclude that, in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. . . .

**3.** The Sixth Circuit also held that

[the plaintiff] should normally include in the original complaint all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law. If he does not, however, and if a qualified immunity challenge is made to the complaint, then, we believe, the court must accord the plaintiff an opportunity to come forward with such additional facts or allegations that show not only violations of his constitutional rights, but also

that these rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.

*Dominque*, 831 F.2d at 676 (citation omitted). Here, Juide had an opportunity to come forward with the requisite facts and allegations in her responsive pleading and at the hearing.

"Simply put, while official action is not necessarily protected by qualified immunity unless and until the very action in question has been held unlawful ..., the unlawfulness must be apparent in light of pre-existing law." *Marsh v. Arn,* 937 F.2d 1056, 1067 (6th Cir. 1991) (citations omitted).

In *850 S. Maple,* this Court noted that "[t]he question of whether pre-seizure notice and a hearing is required before the forfeiture of a leasehold interest is one of first impression in this Circuit." 743 F.Supp. at 509. In its discussion, this Court cited several Supreme Court decisions on the issue; to wit, *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (Florida and Pennsylvania replevin provisions violate due process); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (police procedures did not result in unreasonable search of automobile); *Silverman v. United States,* 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) (eavesdropping accomplished by means of unauthorized physical penetration of premises violated Fourth Amendment); and *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (Puerto Rican forfeiture statutes, which provided for pre-notice seizure, was valid as applied to yacht). However, none of these cases dealt with the seizure of a home under 21 U.S.C. § 881(a)(7) and the need for notice and an opportunity to challenge the seizure warrant at the hearing.

The only case on point, and upon which this Court relied, was *United States v. Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258 (2d Cir.1989) which was decided on November 17, 1989. The alleged misconduct in the case at bar occurred just six months later in April of 1990. While *Livonia Road* "point[ed] unmistakably to the unconstitutionality of the conduct complained of, [it was not] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Seiter,* 858 F.2d at 1177. The authority relied upon by the *Livonia Road* court indicated that one would be justified in postponing pre-seizure notification and an opportunity

for a hearing under extraordinary circumstances. *Fuentes,* 407 U.S. at 90, 92 S.Ct. at 1999; *Calero–Toledo,* 416 U.S. at 679, 94 S.Ct. at 2089–2090. Neither Supreme Court case suggested a different outcome if the property to be seized was a home. Rather, the test remained one of exigent circumstances.

In the forfeiture action, the Government argued that exigent circumstances existed to support the pre-notice seizure of Juide's apartment. *850 S. Maple,* 743 F.Supp. at 511. This Court found to the contrary, concluding that the proffered reasons did not satisfy the requirements of *Fuentes. Id.* Notwithstanding the Court's final decision, no evidence exists which would cast doubt upon the Government's belief that its actions were consistent with established law.

■ In summary, this Court does not believe that *Livonia Road* satisfies the Sixth Circuit test in *Seiter.* As a result, this Court concludes that the due process requirement of pre-seizure notice in the context of an *in rem* civil forfeiture proceedings of a leasehold interest was not clearly established at the time of the misconduct.

With respect to the claim that she had "the right not to have a prosecutor circumvent the privilege against self-incrimination by invoking a civil remedy to enforce a criminal statute," (Complaint at ¶ 17), Juide offers no argument to demonstrate the existence of such a clearly established right. This Court touched upon the issue in *850 S. Maple* when it stated that

[The holding in *United States v. U.S. Currency,* 626 F.2d 11 (6th Cir.1980), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980) ] is consistent with the idea that "a prosecutor may not circumvent a person's privilege against self-incrimination by invoking a civil remedy to enforce a criminal statute...." In civil forfeiture proceedings, the burden of proof shifts from the Government to the claimant once probable cause has been shown. Under these circumstances, the claimants are put in the position of having to choose between "incriminating themselves, or, of failing to file an answer ... to the [G]ov-

ernment's complaint". unless granted immunity from criminal prosecution.

743 F.Supp. at 515 (citations omitted.) Thereafter, the case was stayed, pending the grant of full immunity to Juide by the state or local officials. However, there was never a finding that her privilege against self-incrimination had been violated.

 In any event, a civil forfeiture proceeding is not barred simply because it may implicate an individual's privilege against self-incrimination:

> Certainly, [a defendant] may assert his right against self-incrimination in a forfeiture proceeding. This does not mean, however, that the forfeiture action is barred because of the possibility that the claimant will be disadvantaged by remaining silent. Even if the forfeiture would genuinely prejudice the claimant's fifth amendment rights, the court should not dismiss the forfeiture, but should seek alternative means of accommodating both the claimant's rights and the government's interest in the forfeiture.

*United States v. $250,000 in United States Currency,* 808 F.2d 895, 901 (1st Cir.1987) (citing *United States Currency,* 626 F.2d at 15).

Inasmuch as an *in rem* civil forfeiture proceeding is not barred because it may implicate Fifth Amendment privileges, Juide's allegations cannot withstand the defense of qualified immunity. The Government, acting through Markman and Best, was not precluded from initiating the lawsuit so long as some form of immunity was granted to Juide. In *850 S. Maple,* she was granted use immunity by the federal Government. 743 F.Supp. at 514. Juide did not possess a right to full, transactional immunity. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (use immunity is coextensive with the privilege against self-incrimination). In the absence of clearly established law which would preclude an *in rem* forfeiture proceeding if the privilege against self-incrimination is implicated to any degree, Markman and Best are entitled to qualified immunity on this claim.

Because Markman and Best did not raise the defense of qualified immunity in relation to Juide's claim of conspiracy to cause a constitutional deprivation by giving legal advice, the Court will not address its application to this claim. In summary, Markman and Best are entitled to qualified immunity on the alleged violations of Juide's due process rights and her privilege against self incrimination.

### B. *State Law Claims*

The Federal Employees Liability Reform and Tort Compensation Act of 1988 (Westfall Act), 28 U.S.C. § 2679, amended the Federal Tort Claims Act (FTCA) to "provide for the substitution of the United States as a defendant in an action where a federal employee is sued for monetary damages arising from a common law tort allegedly committed by the employee acting within the scope of his or her employment." *Arbour v. Jenkins,* 903 F.2d 416, 419–20 (6th Cir.1990). , The statute, which provides the exclusive remedy for such actions, reads in pertinent part that

> (b)(1) The remedy against the United States provided by section 1346(b) ... for injury or loss of property, or personal injury or death arising or resulting from the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.
>
> (2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government—
>
>> (A) which is brought for a violation of the Constitution of the United States....
>
> (d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in

a United States district court shall be deemed an action against the United States under the provisions of this title and all reference thereto, and the United States shall be substituted as the party defendant.

The Attorney General has delegated the authority to make the above certification to the United States Attorneys who are subject to the instruction and supervision of the Assistant Attorney General in charge of the Civil Division. 28 C.F.R. § 15.3.

In the present case, Juide asserted state law claims (invasion of privacy and intentional infliction of emotion distress) against Markman and Best. In their defense, Markman and Best have attached a certificate from L. Michael Wicks[4], in which he contends that they were acting within the scope of their duties. Based upon the plain reading of 28 U.S.C. § 2679, they maintain that the United States should be substituted in this case as the party defendant to these claims.

Juide opposes the substitution, contending that (1) the certificate is defective, and (2) the statute is unconstitutional. Juide also submits that the Defendants' certificate is inadmissible under Federal Rule of Civil Procedure 56(e).

■ This Court disagrees. Nothing in this rule or in Federal Rule of Civil Procedure 12(b)(6) limits the material that a court may consider to affidavits, depositions, and answers to interrogatories. Moreover, an examination of the challenged certificate does not support Juide's allegation that this document is defective. *See Arbour,* 903 F.2d at 421 (plaintiff has right to contest certification under Westfall Act.) Hence, this Court will consider the Markman–Best certificate and assess the merits, if any, of its content.

■ Furthermore, 28 U.S.C. § 2679 is not unconstitutional. Contrary to Juide's arguments, it does not preempt state law. Rather, the statute, in combination with 28 U.S.C. § 1346(b), defines the circumstance in which the United States can be sued for the tortious actions of an employee. Without this legislation, the United States, as a sovereign, would be immune from suit. *See Unit-*

*ed States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

Moreover, approximately eight months after the Supreme Court rendered its decision in *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which limited a federal official's absolute immunity from tort claims, Congress amended subsection (b) and (d) of 28 U.S.C. § 2679 to include the language relating to tort claims and certification. Prior to its amendment, the statute permitted the substitution of a party only if the injury arose from the employee's use of a motor vehicle. The fact that the language in 28 U.S.C. § 2679 goes beyond the scope of *Westfall* is not dispositive of its constitutionality. To the contrary, the Sixth Circuit has impliedly acknowledged the constitutionality of the Westfall Act. *Arbour,* 903 F.2d at 420 (citations omitted). Likewise,

> [t]he great weight of authority upholds the constitutionality of this statute. Several statute have been passed in recent years substituting the United States as a defendant for its employees or contractors and denying the right of recovery against the individual defendants, placing the responsibility for their actions upon their employer, the government.

*Sowell v. American Cyanamid Co.,* 888 F.2d 802, 805 (11th Cir.1989) (citations omitted).

In addition, this statute appears to fall within the powers of the Congress to enact all laws that are "necessary and proper for carrying into execution ... all other powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Constitution Art. 1, § 8. It defines when the United States can be sued for tort claims. Hence, it is not unconstitutional on this basis.

■ For the reasons that are set forth above, the Court determines that the United States should be substituted as the proper defendant.

Pursuant to 28 U.S.C. § 2675, Juide must file a claim with the appropriate federal agency and exhaust her administrative remedies before seeking judicial relief:

> An action shall not be instituted upon a claim against the United States for money

---

4. Chief of the Civil Division, Office of the U.S. Attorney, Eastern District of Michigan.

damages for injury … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail….

28 U.S.C. § 2675(a). The administrative claim requirement is a jurisdictional requirement which is not capable of waiver. *Garrett v. United States,* 640 F.2d 24, 26 (6th Cir. 1981); *Rogers v. United States,* 675 F.2d 123, 124 (6th Cir.1982).

In the present case, Juide has neither alleged nor offered evidence to support the filing of an administrative claim. Hence, it is undisputed that no such claim has been submitted to the appropriate federal agency. Accordingly, this Court does not possess jurisdiction over this claim. As such, it must be dismissed.

Based upon the foregoing, Defendants Markman and Best's Motion to Dismiss will be granted in part.

IT IS SO ORDERED.